JUAN BERRÍOS ARROYO y su esposa NYDIA RIVERA ALVARADO, ETC., demandantes y recurrentes, *v.* TITO ZAMBRANA AUTO, INC., ETC., demandados y recurridos.

*Número:* RE-87-210     *Resuelto:* 13 de febrero de 1989

318

320

*Luis E. Maldonado Guzmán*, abogado de los recurrentes; *José V. Gorbea Varona*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

La importancia que reviste el sistema de ventas a crédito en Puerto Rico, los derechos de los consumidores y de aquellas entidades que se dedican al negocio de adquirir contratos de ventas a plazos nos mueve a revisar la controversia, suscitada en este recurso, relativa al alcance del Art. 209(a)(3) de la Ley de Ventas a Plazos y Compañías de Financiamiento, Ley Núm. 68 de 19 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 749(a)(3). Revocamos la sentencia parcial dictada por el Tribunal Superior, Sala de Bayamón.

I

El pleito está aún en las etapas iniciales. Surge de las alegaciones que los demandantes recurrentes Juan Berríos

Arroyo y su esposa Nydia Rivera Alvarado convinieron con el demandado recurrido Tito Zambrana Auto, Inc. la compraventa de un vehículo de motor "nuevo".(1) A estos fines, el matrimonio utilizó la figura de una persona interpuesta o "testaferro" quien, sin ignorarlo el enajenante y aun con su anuencia, según se alega, compareció como sujeto del acto y adquirió el mencionado automóvil. Se afirma que el esquema simulatorio se ideó "sin intención de defraudar la ley o a un tercero".(2)

El precio de contado del vehículo fue de $22,000, mediando pago en efectivo por la suma de $6,000. Para que el recurrido Chase Manhattan Bank (en adelante Chase) financiara el balance adeudado mediante préstamo a los compradores, éstos sometieron a dicha institución en la misma fecha (18 de septiembre de 1984) una "solicitud de crédito" y un documento denominado "Orden de Compra". Este último contenía, en letras pequeñas al final del pliego, el aviso siguiente: "Esta Orden no es Válida sin la Firma del Gerente y *además la Aprobación por la Entidad Financiera De la Cual se solicite el Crédito para el Financiamiento del Balance Adeudado.*" (Énfasis suplido.) Anexo 3, pág. 16. El mismo día, el *Contrato de venta al por menor a plazos (Contrato de venta condicional)* fue cedido al Chase. Anexo 1, pág. 13.

Con el tiempo el automóvil comenzó a presentar serios defectos que atentaban contra los elementos básicos de su estructura. Posteriormente, como resultado de unas averiguaciones y evaluaciones técnicas, la parte demandante des-

---

(1) Así surge del contrato de venta condicional que el recurrido Chase Manhattan Bank (en adelante Chase) acompañó con su recurso.

(2) No está planteado en esta etapa del pleito la eficacia o ineficacia de este acuerdo simulatorio. Tampoco tenemos un récord adecuado para concluir que hay elementos de ilicitud o fraude involucrados en el acto. Dicho aspecto de la controversia deberá ser analizado cuidadosamente por el foro primario a la luz de la prueba que en su día surja.

cubrió que el referido vehículo había sido propiedad de otra persona, quien lo chocó violentamente al punto de ser declarado "pérdida total" por la compañía aseguradora. Apéndice 2, pág. 8. Luego de reconstruido, fue vendido a Tito Zambrana Auto, Inc., quien a su vez lo vendió a los demandantes como nuevo.

Después de presentada la correspondiente acción por el comprador, éste alegó que el demandado Tito Zambrana Auto, Inc. actuó de forma dolosa ya que, a sabiendas "y con el propósito deliberado de engañar" (apéndice 2, pág. 8), ocultó a los compradores lo anteriormente reseñado. Se demandó conjuntamente al cesionario del contrato y se solicitó, en síntesis, la resolución del contrato entre Tito Zambrana Auto, Inc. y la parte demandante, así como el contrato de cesión entre la vendedora y el Chase "por falta [o defecto] de causa". Anexo 4, pág. 19.

La vendedora contestó la demanda y negó los hechos básicos en los que se fundamenta la causa de acción. Lo mismo hizo el Chase cuando alegó que los daños reclamados eran de la exclusiva responsabilidad de la vendedora y cedente Tito Zambrana Auto, Inc. A estos efectos le notificó demanda contra coparte.

Luego de varios incidentes, el Chase presentó una moción de desestimación en la que alegó fundamentalmente que la parte demandante no le había notificado los alegados defectos del vehículo en el tiempo y en la forma que establece la Ley de Ventas a Plazos y Compañías de Financiamiento, *supra*, por lo que carecía de causa de acción en su contra. El tribunal a quo acogió el planteamiento y desestimó parcialmente la demanda sin perjuicio de que los demandantes continuaran su reclamación en contra del vendedor.

A solicitud de la parte demandante recurrente decidimos revisar. La adecuada adjudicación del recurso requiere que examinemos la figura contractual que sirve de fundamento al negocio en este caso: el contrato de venta condicional y su

conexión con la estructura del crédito y del financiamiento; el instituto de la cesión de contratos, en particular la cesión del "contrato de venta al por menor a plazos" y, por último, es necesario llevar a cabo una breve exégesis de la disposición de la Ley de Ventas a Plazos y Compañías de Financiamiento objeto de la controversia.

## II

El crédito en los tiempos actuales constituye uno de los fundamentos sobre los cuales se asienta el desarrollo socioeconómico del país. La extensión de crédito al consumidor en las comunidades contemporáneas se ha convertido en un factor importante en el desarrollo de la economía porque facilita el acceso a numerosos productos de consumo. Véanse, en general: D. Caplovitz, *Consumers in Trouble: A Study of Debtors in Default*, Nueva York, The Free Pres, 1974; R. Bercovitz, *Las ventas a plazos de bienes muebles*, XIX An. Der. Civ. 117 (1966); D. Caplovitz, *The Poor Pay More; Consumer Practices of Low-income Families* , Nueva York, The Free Press, 1967; G.A. Stiglitz, *Protección jurídica del consumidor*, Buenos Aires, Ed. Depalma, 1986; S. Litvinoff, *Las ventas a plazos en el Derecho puertorriqueño*, Orford, Equity Pub. Corp., 1965; Informe Económico al Gobernador 1985–1986, San Juan, Junta de Planificación de Puerto Rico, 1987, pág. I–11.

El fenómeno tomó forma destacada en la figura de la venta a plazos y ésta, a su vez, junto al desarrollo de otros principios de técnica bancaria y comercial, adquirió fuerza con el auge en la venta de automóviles y la producción en serie. Como bien señala De Cossío Corral, "[e]n la evolución legislativa del Derecho comparado se distinguen claramente tres etapas: la primera, de protección del comprador; la segunda, de regulación de las actividades de las empresas financieras interpuestas; y la tercera se deriva de la necesidad de distinguir en cuanto a financiación y modalidad de crédito,

entre los bienes de producción y los bienes de consumo". F. De Cossío Corral, *La Ley de Ventas a Plazos*, 38 Rev. Crít. Der. Inmob. 1125–1126 (1965).

■ El contrato de *venta condicional* es una modalidad particular de la compraventa y más específicamente de la denominada venta a plazos. Está reglamentada en Puerto Rico —de acuerdo con el modelo anglosajón— por la Ley Núm. 61 de 1916, según enmendada, 10 L.P.R.A. secs. 31–41. Se trata de un ordenamiento especial que cubre aspectos importantes de la venta: el negocio en sí, la garantía, la forma de ejecución, la inscripción de los actos, etc.

■ En los ordenamientos jurídicos que siguen la tradición civilista han evolucionado fórmulas afines o compraventas de cosas muebles con pacto de reserva de dominio. En otras palabras, no estamos ante un fenómeno aislado. Por el contrario, la expansión del crédito ha originado diversas formas de compraventas con pago diferido, ajustadas a las distintas modalidades locales y ordenamientos jurídicos. Véanse: R. Bercovitz y Rodríguez-Cano, *Comentarios a la Ley de Ventas a Plazos de Bienes Muebles*, Madrid, Ed. Montecorvo, 1977; Bercovitz, *supra*; V. Baldo, *El registro de ventas a plazos de bienes muebles y sus principios informadores*, 53 Rev. Crít. Der. Inmob. 9–26 (1977); E. Lalaguna, *Perspectiva actual de la hipoteca mobiliaria y la prenda sin desplazamiento en relación con la venta a plazos de bienes muebles*, 43 Rev. Crít. Der. Inmob. 677–718 (1967).

■ De acuerdo con un destacado estudioso del tema:

La compraventa a plazos es, según hemos visto, una solución económica a problemas económicos; pero, a su vez, es fuente de problemas jurídicos. En efecto, el campo de la economía está dominado por el choque de intereses, y de esta característica general no se salva la compraventa a plazos. Carnelutti dice que "el fin del Derecho consiste en reducir la

economía a la ética". El ordenamiento jurídico tiene que armonizar esos intereses económicos en todos y cada uno de los casos en que aparezcan contrapuestos. Por eso, la aparición de nuevas operaciones y situaciones económicas plantea al Derecho la necesidad de regular los nuevos intereses en juego de acuerdo con los criterios de la Justicia. Esto es lo que ocurre con la compraventa a plazos, en la que hay que compaginar los intereses del vendedor, comprador, financiador y terceros, junto con el interés de la comunidad. . . . (Escolio omitido.) Bercovitz, *supra*, pág. 119.

■ En Puerto Rico hemos resuelto que un contrato de venta condicional, si bien no es un instrumento negociable, puede ser cedido a un tercero. *Universal Credit v. Tribl. Superior*, 77 D.P.R. 574 (1954). También hemos dicho que:

En la situación creada por una venta hecha de acuerdo con esta ley, el comprador es un verdadero dueño de los bienes comprados, pero en un dominio sujeto a desaparición por medio de la resolución, o sea por el acaecimiento del suceso que constituye la condición del contrato.

.     .     .     .     .     .     .     .     .

Como un aspecto práctico de las ventas condicionales y sus efectos, es de conveniencia recordar que en las ventas condicionales de automóviles en Puerto Rico, el comprador condicional paga los gastos y primas del seguro, la licencia y la contribución del automóvil. Se halla, por tanto, en el caso de cumplir todos los deberes del dueño o propietario del carro. Y es que, legal y prácticamente, es el dueño, con el riesgo de que su dominio se extinga si no cumple la condición de pagar lo convenido. *Montalvo v. Valdivieso*, 38 D.P.R. 545, 552–555 (1928).[3]

---

[3] Además, es interesante señalar que en el caso de las ventas condicionales de vehículos de motor, aunque las mismas se inscriben en un registro especial en el Departamento de Transportación y Obras Públicas, la Sec. 1–123 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 141 de 20 de julio de 1960 (9 L.P.R.A. sec. 323), que es posterior a la Ley de Ventas Condicionales, Ley Núm. 61 de 13 de abril de 1916 (10 L.P.R.A. sec. 31 *et seq.*), crea una presunción de que el titular en el registro de vehículos del Departamento de Transportación y Obras

■ Salvo raras excepciones, el crédito que el comprador necesita para adquirir el bien pagadero a plazos es facilitado por entidades financieras, debido principalmente a que las personas o compañías dedicadas al negocio de ventas al por menor carecen del capital necesario para financiar estas operaciones. Es por ello que el financiamiento y la oferta de crédito han quedado a cargo de compañías que se especializan en este género de negocios. L. Díez-Picazo y A. Gullón, *Sistema de derecho civil*, 2da ed., Madrid, Ed. Tecnos, 1980, Vol. II, pág. 359; Litvinoff, *op. cit.*, págs. 34–35.

■ En teoría, una vez perfeccionada la compraventa a plazos, el vendedor recurre a una entidad financiera cediéndole su posición frente al comprador, a cambio del pago inmediato del precio pendiente. No obstante, por la naturaleza dinámica del financiamiento de consumo, ambas operaciones ocurren simultáneamente. Por . supuesto, generalmente existe un previo acuerdo genérico entre el vendedor y la empresa que brinda el crédito a través del cual ésta se compromete a financiar las ventas a plazos que el vendedor vaya realizando en el ámbito de su actividad comercial. El interés del cesionario, por otro lado, no consiste en vender, sino en extraer de su capital un rendimiento financiero. Bercovitz y Rodríguez-Cano, *op. cit.*, pág. 132.

■ Este esquema —venta a plazos y financiamiento simultáneo— ha creado una relación tripartita entre el comprador, el vendedor y la compañía financiera en la que la cesión del contrato de venta condicional está prevista desde el

---

Públicas es el *dueño* del vehículo de motor. *Muñoz Meléndez v. Farmer*, 104 D.P.R. 297 (1975). La misma ley le impone responsabilidad a dicho dueño en casos de accidentes de tránsito cuando permite que otras personas conduzcan su vehículo. Sec. 13–101 (9 L.P.R.A. sec. 1751). De su texto claramente se desprende que la Ley de Vehículos y Tránsito de Puerto Rico no considera propietario del automóvil al vendedor condicional.

mismo momento en que se perfecciona la compraventa original. La segunda actividad, que en realidad es un préstamo al comprador, transforma la operación para el vendedor prácticamente en una venta al contado y lo que deja subsistente es la obligación de pago en los plazos convenidos al quedar el comprador deudor de la entidad financiera cesionaria.

■ Con relación al pago del precio, en algunos casos el vendedor permanece vinculado a la operación; en otros casos desaparece totalmente. Cuando la transferencia se hace por "endoso simple", el vendedor se convierte en responsable del saldo en caso de defecto de pago por el comprador. Por el contrario, si la transferencia o reventa asume la modalidad de "endoso sin responsabilidad" (*non recourse plan*) o "sin recurso", el vínculo del vendedor desaparece desde el momento en que el documento es transferido al financiador. E. Mestre Martínez, *La Venta a Plazos*, Madrid, Ed. Santillana, 1963, pág. 117;(4) Litvinoff, *op. cit.*, pág. 39.

■ La finalidad propia de la cesión es la transmisión de la titularidad del contrato de venta condicional del cedente al cesionario. En el ámbito discutido, el vendedor cede su posición en el contrato de venta condicional con sus derechos y obligaciones. *Universal Credit v. Tribl. Superior*, supra, pág. 580. Nótese que lo que se transmite en realidad es el derecho de crédito del vendedor y sus correspondientes obligaciones hasta que el comprador pague todo el precio.

---

(4) Cuando la reventa se hace *con recurso* al cedente se convierte en la práctica en fiador del deudor cedido. L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1972, Vol. 1, pág. 795. Esta modalidad de endoso nunca fue favorecida por los vendedores "puesto que la acumulación de cierto número de operaciones creaba para ellos el riesgo de la ruina total, en caso de tener que afrontar la necesidad de responder por el incumplimiento de un número importante de compradores". S. Litvinoff, *Las ventas a plazos en el Derecho puertorriqueño*, Orford, Equity Pub. Corp., 1965, pág. 38.

■ Según la doctrina civilista, la cesión de contrato origina para el cedente un efecto liberatorio frente al deudor. "De ello se deduce, por una parte, que el cedido ya no tiene frente al cedente derecho ni obligación alguna (salvo el pacto accidental de garantía por el cumplimiento); por otra parte, que el cedido tiene frente al cesionario todos los derechos y obligaciones constitutivos de la relación contractual. . . . En cambio, la posición que nace para el cesionario viene determinada por el hecho de quedar convertido en parte del contrato que se cede y, por lo mismo, en titular de los créditos y deudas que, nacidos de aquél, existen todavía." M. García Amigo, *La cesión de contratos en el Derecho español*, Madrid, Ed. Rev. Der. Privado, 1963, pág. 379.

■ Ahora bien, en la cesión de un contrato de "venta al por menor a plazos" (venta condicional), el cedente no queda liberado, porque en virtud de la Ley de Ventas a Plazos y Compañías de Financiamiento el legislador expresamente dispuso que el vendedor retuviera su responsabilidad frente al comprador. Art. 209(f) de la Ley Núm. 68, *supra*, 10 L.P.R.A. sec. 749(f). Las obligaciones principales del vendedor en la compraventa son la entrega y saneamiento de la cosa vendida. Art. 1350 del Código Civil, 31 L.P.R.A. sec. 3801. Considerando estas características particulares, la figura creada por el legislador realmente constituye una cesión de contratos atípica o sui géneris. Véase, también, el Art. 202(5) de la misma ley, 10 L.P.R.A. sec. 742(5).

Aclarado brevemente el complejo ámbito de la cesión en este caso, fruto de la expansión del crédito y la creación de formas especiales de financiamiento, examinemos el alcance y el significado del Art. 209(a)(3) de la Ley de Ventas a Plazos y Compañías de Financiamiento, *supra*.

## III

En 1964 el legislador aprobó la Ley Núm. 68, Ley de Ventas a Plazos y Compañías de Financiamiento, 10 L.P.R.A. sec. 731 *et seq.*, estatuto general sobre ventas a plazos que no derogó la Ley de Ventas Condicionales ni la Ley Hipotecaria de la Propiedad Mueble, Ley Núm. 19 de 3 de junio de 1927 (30 L.P.R.A. sec. 1871 *et seq.*). Por el contrario, su propósito fue regular de forma más amplia todo el campo del crédito en Puerto Rico, particularmente en lo que a la intervención de un tercer cesionario se refiere.

La medida se originó en el P. de la C. 828 con la intención de proteger a los consumidores y comerciantes puertorriqueños de gastos excesivos de financiamiento. 18 Diario de Sesiones de la Asamblea Legislativa, T. 3, págs. 1677–1678 (1964). Luego de su creación ha sido objeto de varias enmiendas, entre ellas las originadas por el Sustitutivo del P. de la C. 1388 con el fin de "proveer protección eficaz a la clase consumidora". Informe de la Cámara de Representantes, Comisiones de Gobierno, Planificación, Comercio e Industria y de Asuntos del Consumidor, marzo de 1972, pág. 4.

Una de las disposiciones objeto de enmienda fue el Art. 209(a)(3) de la Ley Núm. 68, *supra*. En efecto, la Ley Núm. 78 de 31 de mayo de 1972 (1972 Leyes de Puerto Rico 177) enmendó este inciso en términos generales. Hasta ese momento, el Art. 209(a) señalaba, en lo pertinente:

Ningún contrato [de venta al por menor a plazos] contendrá disposiciones en virtud de las cuales:

(a). El comprador convenga en no interponer contra un cesionario cualquier reclamación o defensa que surja de la venta, *mas podrá contener tal disposición respecto de un cesionario que adquiera el contrato o un pagaré relacionado con éste, de buena fe y por valor y siempre que dicho cesionario no haya tenido conocimiento de los hechos de los cuales*

*surja la reclamación o defensa dentro de los 10 días siguien-*
*tes a la fecha en que hubiera enviado al comprador, por co-*
*rreo, a la dirección de éste que conste en el contrato, un aviso*
*de tal cesión. . . .* (Énfasis suplido.) 1964 Leyes de Puerto Rico
201, 207.

En otras palabras, dicha cláusula incorporaba, en el área
de las ventas a crédito en Puerto Rico, la figura del "tenedor
de buena fe" o el llamado *"holder in due course"* del derecho
anglosajón. Informe de la Cámara de Representantes, *su-*
*pra,* pág. 12. En el contexto señalado se refiere al principio
que ampara al cesionario, adquirente de "buena fe" y por
valor de un contrato de ventas a plazos, si el comprador no le
pone en conocimiento de alguna reclamación relacionada con
la cosa vendida dentro de determinado plazo a partir de la
fecha de recibo del aviso de cesión.

En Estados Unidos los tribunales frecuentemente se
mostraron renuentes a aplicar la norma de forma automática
por entender que colocaba a los consumidores en estado de
indefensión frente a vendedores y entidades financieras. Vé-
anse: *Unico v. Owen,* 232 A.2d 405 (1967); E.M. Farnsworth
y J. Honnold, *Commercial Law: Cases and Materials,* 4ta
ed., Nueva York, The Foundation Press, 1976, pág. 96 *et seq.*
De hecho, la regla recibió críticas vehementes. D.J. Benson y
A.M. Squillante, *The Role of the Holder in Due Course Doc-*
*trine in Consumer Credit Transactions,* 26 Hastings L.J.
427 (1974); V. Countryman, *The Holder in Due Course and*
*Other Anachronisms in Consumer Credit,* 52 Tex. L. Rev. 1
(1973); M. Hansford, *The Holder in Due Course—An En-*
*dangered Species?,* 37 Ala. Lawyer 540 (1976); E.J. Murphy,
*Another "Assault Upon the Citadel": Limiting the Use of*
*Negotiable Notes and Waiver-of-Defense Clauses in*
*Consumer Sales,* 29 Ohio St. L.J. 667 (1968); R.J. Rohner,
*Holder in Due Course in Consumer Transactions: Re-*
*quiem, Revival, or Reformation?,* 60 Cornell L. Rev. 503
(1975); A.J. Rosenthal, *Negotiability—Who Needs It?,* 71

Colum. L. Rev. 375 (1971); Panel Discussion, *Holder in Due Course: Does the Consumer Pay?*, 32 Bus. Law. 591 (1977); Nota, *A Case Study of the Impact of Consumer Legislation: The Elimination of Negotiability and the Cooling-Off Period*, 78 Yale L.J. 618 (1969).

Por espacio de una veintena de años, y preferentemente por vía legislativa, la doctrina ha sido derogada en las distintas jurisdicciones.(5) Un ejemplo es el del estado de Nueva York, de donde procede nuestro estatuto de ventas a plazos. Véanse: *Nassau Trust Co. v. Wes Carman's Marina*, 461 N.Y.S.2d 155 (1983); *Hempstead Bank v. Babcock*, 453 N.Y.S.2d 557 (1982); *Gramatan Home Investors Corp. v. Lopez*, 386 N.E.2d 1328 (1979).

En Puerto Rico recibimos las corrientes de los nuevos enfoques. Ya en 1970 el Informe del Consejo Asesor del Gobernador para el Desarrollo de Programas Gubernamentales, 16 de diciembre, recomendaba la eliminación de la doctrina del "tenedor de buena fe" de nuestra Ley de Ventas a Plazos.

El principio básico fundamental de esta recomendación— *que las compañías financieras o bancos que compran un contrato deben estar en los zapatos del comerciante ante la ley*— ya fue adoptado como política pública al redactar la Ley 68, pero esta ley ha sido inefectiva en poner el principio en vigor. Bajo la ley común, *los bancos y compañías financieras siempre tienen recurso contra el comerciante, y esto, creemos no-*

---

(5) Véanse, también: D.W. Garner y D.W. Dunham, *FTC Rule 433 and the Uniform Commercial Code: An Analysis of Current Lender Status*, 43 Mo. L. Rev. 199 (1978); J. Neeley, *Assault II—Attack on the Holder in Due Course Doctrine, Waiver of Defense Clauses and Direct Loan Immunity*, 83 Com. L.J. 319 (1978); Nota, *Consumer Credit: Abolition of the Holder in Due Course Doctrine*, 10 J. Marshall J. Prac. Proc. 587 (1977); Comentario, *FTC Holder in Due Course Rule Neither Creditor Ruination Nor Consumer Salvation*, 31 Sw. L.J. 1097 (1977); Comentario, *FTC's Holder-in-Due-Course Rule: An Ineffective Means of Achieving Optimality in the Consumer Credit Market*, 25 UCLA L. Rev. 821 (1978); Nota, *Let the Holder Beware: A Problematic Analysis of the FTC Holder in Due Course Rule*, 27 (Núm. 4) Case W. Res. L. Rev. 977 (1977).

*sotros, les da adecuada protección contra las prácticas de co-merciantes inescrupulosos. Si fuera necesario, sin embargo, dicho recurso puede ser reforzado por estipulaciones especí-ficas en los acuerdos entre comerciantes e instituciones fi-nancieras.* (Énfasis suplido.) Informe del Consejo Asesor, *su-pra,* pág. 17.

El P. de la C. 1388 recoge varias de las más impor-tantes recomendaciones formuladas por el mencionado Con-sejo Asesor con el fin de fortalecer la posición del consumi-dor. Entre las innovaciones más destacadas figura la crea-ción de un inciso (5) al Art. 202 de la Ley Núm. 68, *supra,* según el cual todo contrato de venta condicional o cualquier acuerdo para pagar el precio de venta al por menor a plazos deberá incluir al cesionario el aviso siguiente:

El cesionario que reciba o adquiera el presente contrato al por menor a plazos o un pagaré relacionado con éste, *quedará sujeto en igualdad de condiciones a cualquier reclamación o defensa que el comprador pueda interponer en contra del vendedor. El cesionario del contrato tendrá derecho a presen-tar contra el vendedor todas las reclamaciones y defensas que el comprador pueda levantar contra el vendedor de los ar-tículos o servicios.* (Énfasis suplido.) 10 L.P.R.A. sec. 742(5).

Se eliminó igualmente la figura del "tenedor de buena fe" en su forma clásica tal y como surgía del antiguo Art. 209(a) de la Ley Núm. 68, *supra.* Por último, para esta-blecer un balance entre las obligaciones y deberes del cesio-nario y las del comprador, se enmendó este Art. 209(a)(3) para imponerle *al comprador* la obligación de notificar al ce-sionario las causas de acción o defensas que surgieran de la venta. El texto de la disposición enmendada quedó en los términos siguientes:

"3. Si el vendedor no hubiere cumplido todas sus obligacio-nes para con usted, usted deberá notificarlo al cesionario, por escrito, mediante correo certificado con acuse de recibo, a la dirección indicada en este aviso, dentro de los 20 días siguien-tes a la fecha en que tenga conocimiento de algún hecho que

pueda dar lugar a una causa de acción o defensa que surja de la venta y que pudiera usted tener en contra del vendedor." 10 L.P.R.A. sec. 749(a)(3).

■ La redacción del Art. 209(a)(3) de la Ley Núm. 68, *supra*, es el fruto del equilibrio al que se llegó en la Legislatura entre los que pretendían derogar radicalmente la doctrina y los que pretendían ampliarla en favor de vendedores y compañías financieras. La intención fue proteger al cesionario de un contrato de ventas a plazos de aquellas reclamaciones por acciones de saneamiento por evicción o vicios ocultos, de no notificar el comprador al financiador en los términos expresados.[6]

■ Un examen de la técnica utilizada por el legislador demuestra que la disposición citada no es otra cosa que un rezago de la doctrina del "tenedor de buena fe", un mecanismo destinado a limitar, en determinadas situaciones, la capacidad tanto activa como defensiva del consumidor frente al cesionario de un contrato de venta condicional de precio aplazado. Véanse: L.M. Hudak y R. Carter, *The Erosion of the Holder in Due Course Doctrine: Historical Perspective and Development* — Part II, 9 U.C.C. L.J. 235 (1977); W.H. Lawrence y J.M. Minan, *The Effect of Abrogating the Holder-In-Due-Course Doctrine on the Commercialization of Innovative Consumer Products*, 64 B.U.L. Rev. 325, 328 (1984).

A la luz de este trasfondo doctrinal, resta examinar el planteamiento central del pleito: que la ausencia de la notificación prevista en el Art. 209(a)(3) de la Ley Núm. 68, *supra*, impide al comprador accionar contra el recurrido Chase.

---

[6] Compárese nuestro estatuto con el *"Retail Installment Sales Act"*, McKinney's Consolidated Laws of New York Annotated, Book 40, Personal Property Law, Sec. 403(2)(a)(3), y la *"Motor Vehicle Retail Installment Sales Act"*, McKinney's Consolidated Laws of New York Annotated, *supra*, Sec. 302(9)(3).

## IV

■ Una mera lectura de las alegaciones demuestra que la causa de acción ejercitada por los demandantes recurrentes *no* es en modo alguno la acción de saneamiento por evicción o vicios ocultos prevista por el legislador en el Art. 209(a)(3) de la Ley Núm. 68, *supra*, sino la de nulidad por error sustancial o engaño doloso que vician el consentimiento en su origen y afectan la perfección misma del contrato. "La causa de acción del demandante, por tanto, surge no del hecho objetivo del defecto en el objeto del contrato que es lo que da vida a una acción de saneamiento, sino de una circunstancia subjetiva provocada por la actuación dolosa del demandado que redundó en unos daños que van más allá del defecto en el objeto del contrato y por tanto están fuera del marco de la figura del saneamiento." *Márquez v. Torres Campos*, 111 D.P.R. 854, 870–871 (1982).

■ Dada la estrecha *conexión funcional* que existe entre el contrato de venta y el de financiación —aunque mantienen su independencia formal— es fácil advertir que bajo la situación jurídica creada la nulidad de pleno derecho del contrato original lleva consigo la inexistencia del negocio de cesión de contrato, ya que carece de objeto. Los negocios están unidos de tal modo "que *la falta o ineficacia de alguno hace desaparecer la razón de existir del otro*". J.A. Torres Lana, *Notas críticas a la Ley de Ventas de Bienes Muebles a Plazos*, 1975 Rev. Der. Priv. 601, 626 (1975). Constituiría una ficción inaceptable interpretar la disposición en controversia de forma tal que el financiador pudiese mantenerse ajeno a la nulidad del contrato fundamental y a las acciones o defensas que esta situación origina.

■ Por diversas avenidas se llega al mismo punto aun bajo la doctrina del "tenedor de buena fe". El estrecho nexo (*close-connectedness*) entre ambos contratos —venta condi-

cional y préstamo— impide considerar al Chase "tenedor de buena fe" al amparo de la figura invocada. Cuando la entidad financiera mantiene una relación estrecha con el cedente o con la transacción misma, se le niega el *status* de tercero. Véase *Universal Credit v. Tribl. Superior,* supra, pág. 587. Con más razón si, como en el presente caso, tiene la última palabra no sólo sobre la otorgación del crédito, sino sobre la perfección del contrato de venta en sí. En palabras de un civilista, "la sombra de la venta aletea sobre la vida del préstamo". Torres Lana, *supra,* pág. 627. Véanse, además: 4 *Hawkland & Lawrence, U.C.C. Series,* Sec. 3–302:03 (Art. 3); N.O. Littlefield, *Preservation of Consumer Defenses in Interlocking Loans and Credit Card Transactions—Recent Statutes, Policies, and a Proposal,* 1973 Wis. L. Rev. 471; Comentario, *The Close-Connectedness Doctrine: Preserving Consumer Rights in Credit Transactions,* 33 Ark. L. Rev. 490 (1979); M.L. Erickson, *Demise of Holder in Due Course, Waiver of Defense, and Interlocking Loan Lender Defenses in Consumer Transactions,* 15 S. Tex. L.J. 236, 240–242 (1974).

▮ Si bien resolvemos que en casos como el presente el consumidor-deudor debe tener disponible contra la firma financiera las defensas relativas a la "inexistencia o nulidad del negocio constitutivo de la obligación", L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial,* Madrid, Ed. Tecnos, 1972, Vol. 1, pág. 796, de la misma forma "debe mantenerse la responsabilidad del cedente en todo caso para asegurar el patrimonio del cesionario, ya que éste nada tuvo que ver con las imperfecciones del contrato base". García Amigo, *op. cit.,* pág. 369.[7] Según nuestro esquema de derecho civil,

---

[7] Los demandantes reclaman en instancia la restitución de toda suma abonada en virtud del negocio impugnado, así como los gastos del contrato y gastos de financiamiento. Alegan igualmente que tanto Tito Zambrana Auto, Inc. como

la empresa que financia no queda desprotegida. Por el contrario, en la cesión de contratos, como en la cesión de créditos, el cedente le responde al cesionario de la existencia y legitimidad del crédito. Véanse: Art. 1419 del Código Civil, 31 L.P.R.A. sec. 3944; J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1978, T. II, Vol. 1, págs. 268–269.

En sus vertientes procesales, no hay impedimento para que la responsabilidad del vendedor se ventile a plenitud en el trámite procesal pendiente ante el foro de instancia. Ambos, tanto cedente como cesionario, son partes en el pleito. De recaer sentencia en contra del Chase, no será necesario tan siquiera citar en evicción al cedente (Arts. 1369–1370 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 3837–3838), quien a la postre le responderá vía el mecanismo de la demanda contra coparte idóneamente utilizado por el Chase.

■ Para efectos de crear el "litisconsorcio pasivo necesario", hizo bien la parte demandante recurrente en demandar tanto a vendedor como a cesionario. "La acción ha de dirigirse contra todas las personas que hubiesen sido parte en el contrato impugnado o *que derivaren del mismo derechos u obligaciones.*" (Énfasis suplido.) Puig Brutau, *op. cit.*, pág. 323.

■ Por supuesto, esta situación en nada impide que el cesionario establezca las cláusulas y garantías que crea necesarias para asegurarse que en situaciones como la presente obtendrá adecuado remedio ante reclamaciones de los compradores. Dicha protección, que la misma ley provee, 10

el Chase responden solidariamente por los "daños y perjuicios y angustias mentales" ocasionadas por las actuaciones dolosas del vendedor. Por no haberse depurado en instancia los hechos en controversia, declinamos resolver en esta etapa el asunto del alcance de las respectivas responsabilidades de los codemandados.

L.P.R.A. sec. 742(5) *in fine,* deberá pactarse en el negocio decesión de contrato.

Por no ser de aplicación a los hechos del presente caso el Art. 209(a)(3) de la Ley de Ventas a Plazos y Compañías de Financiamiento, *supra, procede revocar la sentencia parcial dictada por el Tribunal Superior, Sala de Bayamón, y en su lugar devolvemos el caso para la continuación de los procedimientos.*

El Juez Asociado Señor Rebollo López disiente sin opinión escrita.