ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| CARMEN R. ROLDÁN ROSA<br><br>Recurrida<br><br>V.<br><br>COOPERATIVA DE AHORRO Y CRÉDITO NUESTRA SEÑORA DE LA CANDELARIA (CANDEL COOP.)<br><br>Recurrente | KLRA202300173<br><br><br>Consolidado | Revisión Judicial procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.: MAY-2021-0002659<br><br>Sobre: Compra Venta de Vehículos de Motor |
| CARMEN R. ROLDÁN ROSA<br><br>Recurrida<br><br>V.<br><br>COOPERATIVA DE AHORRO Y CRÉDITO NUESTRA SEÑORA DE LA CANDELARIA (CANDEL COOP.)<br><br>MANATÍ AUTO LLC<br><br>Recurrente | KLRA202300228 | |

Panel integrado por su presidente, el juez Figueroa Cabán, la juez Grana Martínez y el juez Rodríguez Flores

Figueroa Cabán, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de septiembre de 2023.

Comparecen la Cooperativa de Ahorro y Crédito Nuestra Señora de la Candelaria, en adelante Candel Coop. y Manatí Auto LLC, en adelante Manatí Auto, en conjunto los recurrentes, quienes solicitan que revoquemos una *Resolución* emitida por el Departamento de Asuntos del Consumidor, en adelante DACo. Mediante la misma, se declaró ha lugar una querella presentada

Número Identificador

RES2023_____

por la señora Carmen Roldán Rosa, en adelante la señora Roldán o la recurrida, y en consecuencia se declaró la nulidad de un contrato de compraventa de un vehículo de motor entre la señora Roldán y Candel Coop.

Dado que los recursos de revisión judicial de Candel Coop., clasificado alfanuméricamente como KLRA202300173, y de Manatí Auto, clasificado alfanuméricamente como KLRA202300228, plantean errores en la misma resolución final administrativa, ordenamos su consolidación. Orden Administrativa Núm. DJ-2019-316, según enmendada.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* recurrida.

-I-

Surge de la copia certificada del expediente administrativo que, la señora Roldán presentó una *Querella* contra Manatí Auto LLC y Candel Coop. ante DACo.[1] Mediante esta, solicitó que se le devolviera la cantidad total de la compra del vehículo, ya que de haber sabido antes de la compraventa que el automóvil había sido chocado, no lo hubiera comprado.

Luego de varios trámites procesales, DACo celebró una vista administrativa en la cual formuló las siguientes determinaciones de hechos:

1. **El día 6 de noviembre de 2020 la querellante acudió a las facilidades de Manatí Auto para adquirir un automóvil.[2]**

2. **De su testimonio bajo juramento no controvertido se desprende que la atendieron empleados vendedores de Manatí Auto, y adquirió de las facilidades del dealer una**

---

[1] Apéndice de Candel Coop., págs. 7-9. Véase, además, Copia certificada del expediente administrativo, *Querella Número: May-2021-0002659*.
[2] Transcripción de vista, pág. 9.

**unidad vehicular marca Mitsubishi modelo Outlander usada del año 2017. Identificó a uno de los empleados como Luis Irizarry.[3]**

3. Surge de la orden de compra que el vehículo al momento de la compra tenía 49,297 millas.[4]

4. De la orden de compra marcada como el exhibit II de Manatí Auto se desprende que se expresó que el concesionario era "Candel Coop". La orden no tiene la firma de la querellante, y bajo juramento expresó que no se le había entregado esta.[5]

5. Que además se desprende del recibo número 319884 de 6 de noviembre de 2020 un pago de la querellante por la suma de $500 que expresa "…Pronto Depo-Mit-Out 2017…" y que el método de pago fue una "credit card".[6]

**6. Que bajo juramento la querellante expresó que el recibo lo expidió el dealer Manatí Auto.[7]**

**7. Que el testimonio de la querellante es corroborado por el documento que se emite por la aplicación digital para procesar evidencia del pago con tarjetas. El mismo tiene impreso la suma de $500.00, y "Manatí Auto Bo. Coto Norte Carr. 2km Manatí PR 00674 787-944-1111 DEBIT SALE". Además, tiene como fecha de la transacción el 6 de noviembre de 2020.[8]**

8. Que Manatí Auto sometió como evidencia un documento marcado como exhibit I y que tiene como título "Relevo de Responsabilidad y Contrato de Venta de Auto Reposeído. Compraventa", con fecha de 21 de noviembre de 2020.[9]

9. Que este documento tiene como parte compradora a la querellante, y parte vendedora a la Cooperativa de Ahorro y Crédito Nuestra Señora de la Candelaria (Candel COOP)". En su inciso segundo expone lo siguiente:

> La adquisición de la propiedad y posesión del vehículo en referencia se perfeccionó mediante Contrato de Acuerdo de Entrega Voluntaria el 18 de junio de 2020, en virtud de la imposibilidad de el (la) titular, Pedro J. Figueroa Centeno, de hacer los pagos mensuales por la compra del vehículo en cuestión. El (la) titular registral Pedro J. Figueroa Centeno, había adquirido el vehículo antes descrito a través de

---

[3] *Id.*, págs. 13-15.
[4] Copia certificada del expediente administrativo, *Orden de Compra Repo*.
[5] *Id.*
[6] *Id.*
[7] Transcripción de vista, pág. 14.
[8] *Id.*, págs. 35-36.
[9] Copia certificada del expediente administrativo, *Relevo de Responsabilidad y Contrato de Venta Reposeído*.

> compra en Manatí Auto en Manatí, Puerto Rico y la institución que financió la compra y luego pagó el balance adeudado lo fue LA COOPERATIVA DE AHORRO Y CREDITO NUESTRA SEÑORA DE LA CANDELARIA…[10]

10. En el expediente hay una licencia de la unidad vehicular objeto en controversia con vigencia de "nov 2020 a octubre 2021" a nombre de "Pedro Javier Figueroa Centeno".[11]

11. **En su inciso tercero el documento antes mencionado establece lo siguiente:**

   **Que en virtud del Contrato de Cesión y Traspaso a que nos hemos referido anteriormente, al día de hoy, la COOPERATIVA DE AHORRO Y CREDITO NUESTRA SEÑORA DE LA CANDELARIA es la única y legítima dueña del vehículo antes identificado, sin limitación de clase alguna.[12]**

12. En su inciso octavo el documento dispone:

   Que el vehículo descrito anteriormente es vendido sin ningún tipo de garantía, lo que se conoce como una venta "AS IS". Significa que el comprador releva de toda responsabilidad al vendedor, por desperfectos mecánicos que pudiera tener. La única garantía que tendrá el vehículo será la que el fabricante pueda honrar de acuerdo con los términos y condiciones de la venta original del vehículo.[13]

13. Que dicho documento está firmado por la querellante, y tiene un espacio para la firma de "María del Carmen Torres Quiñones Supervisora de Financiamiento de Autos y Crédito Cooperativa de Ahorro y Crédito Nuestra Señora de la Candelaria", y no está firmado por esta.[14]

14. Que surge del expediente un "Contrato de Ventas al Por Menor a Plazos" con fecha de 21 de noviembre de 2020 en el cual aparece como vendedor "Candel COOP", y la querellante como la compradora.[15]

15. **Que, bajo juramento, y testimonio no contradicho, la querellante declaró que como a los tres meses de haber comprado la unidad vehicular esta comenzó a decolorarse y despintarse. Indagó más y le informaron que la guagua fue chocada antes de la compraventa.[16]**

---

[10] *Id.*
[11] Copia certificada del expediente administrativo, *Permiso para Vehículo de Motor o Arrastres.*
[12] *Id., Relevo de Responsabilidad y Contrato de Venta Reposeído.*
[13] *Id.*
[14] *Id.*
[15] *Id.,* Contrato de Ventas al por Menor a Plazos.
[16] Transcripción de vista, pág. 16.

16. El 21 de noviembre de 2022 se hizo la correspondiente inspección por el investigador del DACO, y en la parte de "Resultados de la Inspección" se concluyó lo siguiente:

    La goma del bumper delantero esta despintado, espejo retrovisor y de la puerta del chofer roto. La unidad de mecánica no presenta defectos. El vehículo es reposeído por la Cooperativa y vendido "as is".
    Estimado:    Espejo retrovisor $175.00
                 Pintura de Bumper $290.00
                 Total: $465.00
    Prueba de carretera:
    Millaje antes de la inspección: 75,865
    Millaje luego de la inspección: No aplica...[17]

17. **Que la querellante se expresó bajo juramento que de saber que el auto fue chocado o impactado antes de la compraventa no lo hubiera adquirido.[18]**

18. Que el 2 de septiembre de 2021 la querellante le envió carta por correo certificado a Candel Coop. a los efectos de informarle que radicaría una querella ante el DACO para que se abriera una investigación porque en noviembre de 2020 se le vendió una unidad vehicular sin habérsele informado que esta fue chocada antes de la compraventa.[19]

19. Que con fecha de 4 de septiembre de 2021 la querellante fue a Manatí Auto a entregar una carta similar, pero empleados del dealer se rehusaron a recibirla.

20. **El testimonio de la parte querellante no fue controvertido con evidencia alguna, por lo cual se le adjudicó credibilidad absoluta.[20]**

21. Que la entidad financiera fue La Cooperativa de Ahorro y Crédito Nuestra Señora de la Candelaria hnc Candel Coop. [21]

Evaluada la prueba testifical y documental sometida, DACo concluyó que el carro fue chocado y reparado antes de la compraventa, sin informar a la compradora por escrito y verbalmente de tal hecho.[22]

---

[17] Copia certificada del expediente administrativo, *Informe de Inspección de Vehículos de Motor*.
[18] Transcripción de vista, pág. 15.
[19] Copia certificada del expediente administrativo, Carta con fecha de 1 de septiembre de 2021 y sello de envío por correo certificado con la siguiente numeración: 7020 3160 0001 5259 6050.
[20] Transcripción de vista, págs. 1-58.
[21] Copia certificada del expediente administrativo, *Relevo de Responsabilidad y Contrato de Venta Reposeído.*
[22] Apéndice de Manatí Auto, págs. 13-23.

> A tenor de lo resuelto por el Tribunal Supremo en *Berríos v. Zambrana Auto, Inc.*, 123 DPR 317, 328 (1989), cuando se cede un contrato de venta condicional, el cesionario se subroga en los derechos del cedente y simultáneamente asume todas las obligaciones que éste tenga con el comprador al momento de la cesión. Sin embargo, el Tribunal Supremo aclaró que, tras la cesión del contrato a la entidad financiera, el vendedor no queda exento de responsabilidad por actuaciones previas que perjudiquen tanto los intereses del comprador como de la cesionaria. Cuando se cede un contrato de venta condicional, se origina una responsabilidad solidaria entre el cedente (vendedor) y el cesionario (institución financiera). La solidaridad de la vendedora surge en virtud del contrato de compraventa mientras que la solidaridad de la entidad financiera proviene del Artículo 202 de la Ley Núm. 68 de 19 de junio de 1964, según enmendada, 10 LPRA sec. 742.[23]

A la luz de las circunstancias bajo las que se otorgó el contrato, DACo determinó que sus disposiciones son contrarias a lo establecido en el *Reglamento de Garantías de Vehículos de Motor* de 6 de junio de 2006, en adelante Reglamento Núm. 5179.[24]

En consecuencia, la agencia emitió una *Resolución* en la cual declaró nulo el contrato de compraventa y ordenó que Manatí Auto LLC y Candel Coop. reembolsaran solidariamente la totalidad de los pagos efectuados por la señora Roldán, dentro del término de veinte días, a partir de la notificación de la *Resolución*.[25] Una vez realizado el reembolso, la recurrida debía entregar el vehículo a la parte querellada.[26]

Inconforme, Candel Coop. presentó una *Apelación*, que acogimos como un recurso de revisión judicial, en el que alega que DACo cometió el siguiente error:

> ERRÓ DACO AL DECLARAR NULO EL CONTRATO DE COMPRAVENTA PRIVADO DE VEHÍCULO DE MOTOR DONDE LA PARTE VENDEDORA NO ESTÁ REGULADA POR EL REGLAMENTO DE GARANTÍAS DE VEHÍCULO DE MOTOR, POR

---

[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*

NO POSEER LICENCIA PARA LA VENTA DE VEHÍCULOS DE MOTOR.

Posteriormente, Manatí Auto presentó una solicitud de *Revisión de Decisión Administrativa* y alegó la comisión de siguientes los errores:

ERRÓ EL DACO EN APLICAR EL NUEVO CÓDIGO CIVIL A LOS HECHOS DEL PRESENTE CASO.

ERRÓ EL DACO EN LA APRECIACIÓN DE LA PRUEBA ORAL Y DOCUMENTAL PRESENTADA DURANTE LA VISTA ADMINISTRATIVA, Y AL EXPRESAR DETERMINACIONES DE HECHO Y CONCLUSIONES DE DERECHO QUE NO ESTÁN SUSTENTADAS EN EL RECORD ADMINISTRATIVO.

ERRÓ EL DACO AL REALIZAR UNA DETERMINACIÓN SOBRE SOLIDARIDAD ENTRE LOS QUERELLADOS RECURRENTES AL CALIFICARLOS COMO "VENDEDOR" E "INSTITUCIÓN FINANCIERA".

La recurrida no presentó su alegato en oposición al recurso de revisión en el término establecido en el *Reglamento del Tribunal de Apelaciones*.[27] Por tal razón, el recurso está perfeccionado y listo para adjudicación.

Luego de revisar los escritos de las partes, la transcripción de la prueba oral y la copia certificada del expediente administrativo, estamos en posición de resolver.

**-II-**

**A.**

La revisión judicial de las decisiones administrativas tiene como fin primordial delimitar la discreción de las agencias, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[28] A esos efectos, la revisión judicial comprende tres aspectos, a saber: 1) la concesión del remedio

---

[27] Regla 57 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 57.
[28] *Fuentes Bonilla v. ELA*, 200 DPR 364 (2018); *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011); *Empresas Ferrer v. ARPe*, 172 DPR 254, 264 (2007).

apropiado; 2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y 3) la revisión completa y absoluta de las conclusiones de derecho del organismo administrativo.[29] Además, el tribunal debe determinar si la agencia, en el caso particular, actuó arbitraria o ilegalmente, o de manera tan irrazonable que su actuación constituyó un abuso de discreción.[30]

Por lo tanto, quien pretenda probar que las determinaciones de hechos de la agencia no se sostienen con lo que obra en el expediente, tiene que demostrar que existe otra prueba en el expediente que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda concienzudamente concluir que la evidencia sea sustancial.[31]

Por otro lado, la intervención judicial debe determinar si las conclusiones de derecho del organismo administrativo son correctas.[32] Ahora bien, ello no significa que el tribunal revisor tiene una facultad irrestricta para revisar las conclusiones de derecho del ente administrativo. Al contrario,[33] los tribunales deben concederle gran peso y deferencia a las interpretaciones que los organismos administrativos realizan de las leyes y reglamentos

---

[29] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012); *Padín Medina v. Adm. Sist. Retiro*, 171 DPR 950, 960 (2007).
[30] *Batista, Nobbe v. Jta. Directores, supra,* pág. 216; *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009); *Rivera Concepción v. ARPe*, 152 DPR 116, 122 (2000).
[31] *Batista, Nobbe v. Jta. Directores, supra,* págs. 216-217; *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 512-513 (2011). Véase, además, *Oficina de Ética Gubernamental v. Martínez Giraud*, 2022 TSPR 93, 210 DPR __ (2023).
[32] *Rivera v. A & C Development Corp.*, 144 DPR 450, 460-461 (1997).
[33] *Batista, Nobbe v. Jta. Directores, supra,* pág. 216; *JP, Plaza Santa Isabel v. Cordero Badillo, supra,* pág. 187; *Rivera Concepción v. ARPe, supra,* pág. 122 (2000).

que administran, por lo que no pueden descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de estas por el propio. De este modo, si la interpretación de la ley o reglamento que realiza determinada agencia administrativa es razonable, aunque no sea la única razonable, los tribunales debemos concederle deferencia. Más aún, los tribunales podrán sustituir el criterio de la agencia por el suyo únicamente cuando no encuentren una base racional para explicar la determinación administrativa.[34]

**B.**

En virtud de la Ley Núm. 7 de 24 de septiembre de 1979, conocida como la *Ley de garantías de vehículos de motor*[35], el DACo adoptó el Reglamento de Garantías de Vehículos de Motor del 6 de junio de 2006, en adelante Reglamento Núm. 7159. Este tiene como propósito asegurarle al consumidor que adquiere un vehículo de motor que el mismo sirva los propósitos para los que es adquirido y que, además, reúna las condiciones mínimas necesarias para garantizar la protección de su vida y propiedad.[36]

En lo aquí pertinente, la Regla 3 del Reglamento Núm. 7159 establece que:

> Este Reglamento será aplicable a toda persona natural o jurídica que se dedique por sí misma, o por mediación de su representante o agente, o como agente o representante del fabricante, o como intermediario de otra persona, a la venta y/o servicio de vehículos de motor nuevos o usados en Puerto Rico.[37]

---

[34] *Empresas Ferrer v. ARPe*, *supra*, pág. 266.
[35] Art. 1 de la Ley Núm. 7 de 24 de septiembre de 1979 (10 LPRA secs. 2051 *et seq.*).
[36] Regla 2 del Reglamento de Garantías de Vehículos de Motor del 6 de junio de 2006, Reglamento Núm. 7159.
[37] *Id*, Regla 3.

Así pues, la Regla 5 (g) del Reglamento Núm. 7159 define "Distribuidor autorizado o concesionario" como "[t]oda persona que se dedique a la distribución o venta al detal de vehículos de motor por concesión y autorización o acuerdo con el fabricante o su representante de fábrica en Puerto Rico".[38] A su vez, la Regla 5 (w) define "vendedor" como "[t]oda entidad o persona que debidamente autorizada por ley se dedique a la venta o permuta de vehículos de motor en Puerto Rico".[39]

También, la Regla 6 del mencionado reglamento dispone que este no se aplicará a transacciones privadas de compraventa de vehículos de motor y define "transacción privada" como "aquella efectuada fuera del curso regular de los negocios, por personas que no se dediquen al comercio o al negocio de compra y venta de vehículos de motor".[40]

Finalmente, cabe destacar que de conformidad a la Regla 26.1 del precitado cuerpo normativo "se prohíbe vender un vehículo de motor sin garantía".[41] Asimismo, la Regla 30.2 dispone que "todo vendedor de un vehículo de motor usado, el cual haya sido impactado y reparado posteriormente, deberá indicarlo verbalmente y notificarlo por escrito al consumidor antes de la compraventa".[42]

**C.**

Los contratos de ventas al por menor a plazos están regulados por la *Ley de Ventas a Plazos y*

---

[38] *Id*, Regla 5 (g).
[39] *Id*, Regla 5 (w).
[40] *Id*, Regla 6.
[41] *Id*, Regla 26.1.
[42] *Id*, Regla 30.2.

*Compañías de Financiamiento*, Ley Núm. 68 de 19 de junio de 1964, según enmendada. Esta ley, en su artículo 202, establece la responsabilidad de las partes cuando se cede un contrato de este tipo. Específicamente dispone lo siguiente:

> 4. Todo contrato de ventas al por menor a plazos deberá contener el siguiente aviso: "AVISO AL CESIONARIO" "EL CESIONARIO QUE RECIBA O ADQUIERA EL PRESENTE CONTRATO AL POR MENOR A PLAZOS O UN PAGARÉ RELACIONADO CON ÉSTE, QUEDARÁ SUJETO EN IGUALDAD DE CONDICIONES A CUALQUIER RECLAMACIÓN O DEFENSA QUE EL COMPRADOR PUEDA INTERPONER EN CONTRA DEL VENDEDOR. EL CESIONARIO DEL CONTRATO TENDRÁ DERECHO A PRESENTAR CONTRA EL VENDEDOR TODAS LAS RECLAMACIONES Y DEFENSAS QUE EL COMPRADOR PUEDA LEVANTAR CONTRA EL VENDEDOR DE LOS ARTÍCULOS O SERVICIOS".[43]

De lo anterior es forzoso concluir, que cuando ocurre una cesión de un contrato de compraventa a plazos, se crea una relación tripartita entre el comprador, el vendedor y la compañía financiera.[44] De modo, que la finalidad propia de la cesión es la transmisión de la titularidad del contrato de venta condicional del cedente al cesionario.[45] Sobre este particular, el Tribunal Supremo de Puerto Rico, en adelante TSPR, expresó lo siguiente:

> La cesión de contrato, según la doctrina civilista, origina para el cedente un efecto liberatorio al deudor. De ello se deduce que, por una parte, el cedido ya no tiene frente al cedente derecho ni obligación alguna (salvo el pacto accidental de garantía por incumplimiento) y que, por otra parte, el cedido tiene frente al cesionario todos los derechos y obligaciones constitutivos de relación contractual. En cambio, la posición que nace para el cesionario viene determinada por el hecho de quedar convertido en parte del contrato que cede y, por lo mismo, en titular de los créditos y deudas que, nacidos de aquél, existen todavía.[46]

---

[43] Art. 202 (4) de la Ley Núm. 68 de 19 de junio de 1964 (10 LPRA sec. 742).
[44] *Berríos v. Zambrana*, 123 DPR 317, 328 (1989).
[45] *Id*. pág. 329.
[46] *Id.* pág. 320.

Sin embargo, a diferencia de las cesiones en general, en el caso de la cesión de un contrato de venta al por menor a plazos, el vendedor cedente no queda liberado, porque en virtud de la Ley de Ventas a Plazos y Compañías de Financiamiento, *supra*, el legislador expresamente dispuso que el vendedor retiene su responsabilidad frente al comprador.[47]

## D.

Como regla general, los tribunales apelativos no intervendrán con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos salvo que estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[48]

Esta doctrina de deferencia judicial a la apreciación de la prueba ha sido reiterada por el TSPR en innumerables ocasiones. Su fundamento estriba en que los jueces de instancia están en mejor posición que los foros apelativos para aquilatar la evidencia desfilada en los procedimientos ante sí, observando a los testigos y evaluando la credibilidad de sus declaraciones.[49]

Así pues, a menos que existan circunstancias extraordinarias y que la apreciación de la prueba se distancie de la realidad fáctica o ésta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por

---

[47] *Id*, pág. 330.
[48] *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).
[49] *Muñiz Noriega v. Muñiz Bonet*, 177 DPR 967, 987 (2010); *Pueblo v. Collado Justiniano*, 140 DPR 107, 115 (1996) (Sentencia); *Pueblo v. Cruz Granados*, 116 DPR 3, 10 (1984)(Sentencia).

el juzgador de los hechos.[50] En otras palabras, las determinaciones de hechos que hace el foro de instancia no deben descartarse arbitrariamente ni sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación.[51] La misma premisa subsiste en cuanto a las decisiones de las agencias administrativas, "pues estas gozan de experiencia y conocimiento especializado sobre los asuntos ante su consideración, lo cual ampara sus dictámenes con una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla".[52]

## -III-

Candel Coop. afirma que, si bien le vendió el vehículo de motor a la señora Roldán, el Reglamento 7159 no le aplica, pues se trata de un contrato privado, según definido en la Regla 6 del mismo Reglamento. En esencia, destaca que toma posesión de los vehículos de motor que financia cuando el deudor incumple con su préstamo[53] y luego, dispone de la unidad mediante contratos privados, pues no posee licencia de concesionario.[54]

Por su parte, Manatí Auto arguye que no fue parte de los dos contratos firmados por la recurrida y Candel Coop.: (1) *Relevo de Responsabilidad y Contrato de Venta de Auto Reposeído* y (2) *Contrato de Ventas al Por Menor a Plazos*. Así mismo, declara que solo fungió

---

[50] *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).
[51] *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999).
[52] *Oficina de Ética Gubernamental v. Martinez Giraud*, *supra*.
[53] Recurso de revisión administrativa de Candel Coop., pág. 3.
[54] *Id.*

como facilitador del contrato, cobrando el depósito y ofreciendo sus facilidades para mantener vehículos reposeídos. Por esta razón, entiende que DACo erró en la apreciación de la prueba, al no tomar en consideración las partes firmantes en los contratos otorgados. También, alega que la señora Roldán adquirió el vehículo reposeído "as is", "es decir que asum[ió] cualquier riesgo al adquirir dicho vehículo". A su vez, manifiesta que DACo erró al aplicar el Reglamento Núm. 7159 porque, según dispone la Regla 6, este no aplica a transacciones privadas fuera del curso de los negocios por personas que no se dedican al comercio o al negocio de compraventa de vehículos de motor.

Añade, además, que bajo el Código Civil de 1930 no procede la resolución del contrato porque el vehículo se encuentra en buenas condiciones mecánicas. A su vez, enfatiza que el caso de autos es distinguible de *Berríos v. Tito Zambrana*, *supra*, porque el auto vendido no era nuevo; además, Candel Coop. fungió como vendedora y entidad financiera; no se probó que el vehículo fuera chocado; y no fue parte de los contratos en controversia. En síntesis, bajo estos fundamentos, rechaza cualquier tipo de responsabilidad.

Luego de analizar la transcripción de la prueba oral y la copia certificada del expediente administrativo, somos de la opinión de que la decisión impugnada es razonable, por lo cual no intervendremos con la misma. Veamos.

Surge de un análisis integral de la prueba testifical y documental sometida, que la señora Roldán visitó las facilidades de Manatí Auto; la atendieron empleados de dicha entidad comercial; que pagó a dichos empleados la suma de $500.00 para adquirir el automóvil usado; y que dicha entidad expidió el recibo de pago correspondiente. Bajo los parámetros normativos previamente expuestos es razonable concluir que Manatí Auto le vendió el vehículo en cuestión a la recurrida. Más aun, cuando bajo la Regla 3 del Reglamento Núm. 7159 es vendedor cualquier persona, que como Manatí Auto en este caso, actúe como intermediario de otra, a saber, Candel Coop.

Así mismo, no hay controversia de que Manatí Auto le cedió el contrato de venta a Candel Coop. Esta cesión quedó probada por el *Contrato de Ventas al por Menor a Plazos*, entre Candel Coop. y la señora Roldán.[55] Conforme a la normativa previamente discutida, se originó una responsabilidad solidaria entre el vendedor-cedente, Manatí Auto y la cesionaria Candel Coop., como entidad financiera. Por lo tanto, a la luz del Art. 202 de la *Ley de Ventas a Plazos y Compañías de Financiamiento*, *supra*, Candel Coop. asumió todas las obligaciones del vendedor con la compradora al momento de la cesión, sin desligarse el vendedor, es decir, Manatí Auto, de sus obligaciones para con la señora Roldán.

Por otra parte, según las disposiciones reglamentarias aplicables al caso ante nos, así como el testimonio incontrovertido de la recurrida, es

---

[55] Apéndice de Candel Coop., págs. 5-6.

correcta en derecho la determinación de DACo al declarar nulo el contrato de compraventa. Esto es así, porque del testimonio no refutado de la señora Roldán y de los documentos que obran en el expediente se puede inferir razonablemente, que las recurrentes no cumplieron con el requisito reglamentario de informar a la parte compradora, de manera escrita y verbal, antes de la compraventa, sobre cualquier impacto reparado en el vehículo de motor usado.

Ahora bien, establecida la cesión del contrato de compraventa de Manatí Auto a Candel Coop., también es correcta en derecho la determinación de DACo de ordenarles al cesionario y al cedente reembolsar solidariamente, a la señora Roldán, el dinero pagado para la adquisición del vehículo de motor.

En fin, la resolución de DACo está basada en el expediente administrativo y la interpretación de DACo de la normativa judicial y reglamentaria aplicable, es razonable. En consecuencia, no hay fundamento alguno para intervenir con la decisión administrativa recurrida.

**-IV-**

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones