EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Itzaira Otero Rivera<br><br>Recurrida<br><br>v.<br><br>Bella Retail Group, Inc. h/n/c Flagship Chrysler Bayamón, FCA US LLC h/n/c Chrysler de Puerto Rico; USAA Federal Savings Bank; Assurant Services of PR, Inc.<br><br>Peticionarios | Certiorari<br><br>2024 TSPR 70<br><br>213 DPR ___ |

Número del Caso: CC-2023-0371

Fecha: 24 de junio de 2024

Tribunal de Apelaciones:

Panel II

Representantes legales de la parte peticionaria:

Lcda. Jane Patricia Van Kirk
Lcdo. Ángel Sosa Báez

Representante legal de la parte recurrida:

Lcda. Mirla Mireya Rodríguez Marín

Materia: Obligaciones y Contratos; Ley de Ventas a Plazos y Compañías de Financiamiento – Alcance de la responsabilidad de una entidad financiera cuando se decreta la resolución del contrato de compraventa.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Itzaira Otero Rivera<br><br>     Recurrida<br><br>          v.<br><br>Bella Retail Group, Inc.<br>h/n/c Flagship Chrysler<br>Bayamón, FCA US LLC h/n/c<br>Chrysler de Puerto Rico; USAA<br>Federal Savings Bank;<br>Assurant Services of PR, Inc.<br><br>     Peticionarios | CC-2023-371 | *Certiorari* |

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 24 de junio de 2024.

En este caso, una consumidora solicitó que se decretara la resolución de un contrato de compraventa mediante el cual un concesionario le vendió un vehículo de motor con defectos que no han podido ser reparados. Dentro de ese contexto, nos corresponde precisar cuál es el alcance, si alguno, de la Ley Núm. 68 del 19 de junio de 1964, según enmendada, conocida como Ley de Ventas a Plazos y Compañías de Financiamiento, 10 LPRA sec. 731 *et seq.*, sobre la entidad que proveyó el financiamiento del automóvil.

En particular, este recurso nos brinda la oportunidad de determinar si, a la luz de una interpretación integral del texto estatutario y reglamentario aplicable, una entidad financiera debe responder solidariamente junto al

vendedor de un vehículo de motor por la devolución de las prestaciones cuando se decreta la resolución del contrato de compraventa. Adelantamos que no.

Por los fundamentos que detallamos a continuación, resolvemos que la imposición de solidaridad a la entidad financiera no procede en derecho. En consecuencia, se modifica el dictamen recurrido a los fines de establecer que las prestaciones serán devueltas de manera independiente, según la parte que le corresponda a cada cual. Veamos.

**I**

El 10 de junio de 2020, la Sra. Itzaira Otero Rivera (señora Otero Rivera o recurrida) presentó una querella en contra de Bella Retail Group Inc. d/b/a Flagship (Flagship), Assurant Services of Puerto Rico Inc. y USAA Federal Savings Bank (USAA o peticionaria) ante el Departamento de Asuntos del Consumidor (DACo). La señora Otero Rivera relató que, luego de comprar un vehículo de motor marca Dodge (modelo Grand Caravan de 2019) en el concesionario Flagship, éste confrontó múltiples problemas mecánicos que la llevaron a temer por su seguridad y la de su familia. En síntesis, la recurrida adujo que el automóvil presentó dificultades para encender en varias ocasiones y que notificó a Flagship sobre tales incidentes para que se efectuaran las reparaciones correspondientes. No obstante, alegó que el vehículo de motor no funcionaba y que -por tercera ocasión en los últimos tres (3) meses-

se encontraba en espera de una reparación, por lo cual solicitó la resolución del contrato de compraventa.

Luego de varios trámites procesales, entre los que se incluyó la contestación de Flagship a la querella y la presentación de una querella enmendada por parte de la señora Otero Rivera,[1] USAA presentó una *Contestación a querella y querella enmendada* el 20 de enero de 2021. En resumen, la peticionaria negó las alegaciones de la recurrida y afirmó que éstas no se hicieron en su contra. Así pues, USAA expuso que su única interacción en relación con los hechos del caso fue haberle otorgado el financiamiento a la señora Otero Rivera para que adquiriera el vehículo.[2]

Tras la celebración de una vista administrativa, el DACo emitió una *Resolución* el 6 de octubre de 2021.[3] Allí concluyó que Flagship tuvo una oportunidad razonable para reparar el defecto del vehículo, pero no quiso o no pudo corregirlo. En consecuencia, a la luz de la Ley y el Reglamento de Garantías de Vehículos de Motor, la agencia

---

[1] La Sra. Itzaira Otero Rivera (señora Otero Rivera o recurrida) añadió como co-querellado a Chrysler International LLC. No obstante, FCA US LLC compareció el 6 de octubre de 2020 para aclarar que se le denominó incorrectamente como "Chrysler Group International LLC". Véanse: *Moción informativa asumiendo representación legal y enmienda a querella*, Apéndice del *certiorari*, págs. 68-69; *Notificación de representación legal y moción de notificación de querella*, Apéndice del *certiorari*, pág. 43.

[2] Véase *Contestación a querella y querella enmendada*, Apéndice del *certiorari*, pág. 47.

[3] El archivo en autos de copia de la *Resolución* fue el 8 de octubre de 2021. *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACo), Apéndice del *certiorari*, pág. 66.

declaró con lugar la querella presentada y "decret[ó] la resolución de los contratos de compraventa y de ventas al por menor a plazos con relación al vehículo objeto de la querella".[4] Asimismo, el DACo ordenó tanto a Flagship como a USAA **a reembolsar solidariamente** a la señora Otero Rivera los pagos mensuales efectuados para el financiamiento del vehículo,[5] más el interés legal acumulado sobre dicha cuantía, dentro de un término de treinta (30) días.[6] Por último, la agencia estableció que Flagship y USAA **relevarían solidariamente** a la recurrida del remanente de la deuda pendiente asumida por esta última para financiar el precio del vehículo y que, una vez recibidos los pagos y cancelada la deuda de financiamiento, la señora Otero Rivera devolvería la unidad a Flagship, quien pasaría a recogerla.[7]

Posteriormente, la peticionaria presentó una *Solicitud de reconsideración*.[8] Argumentó que no existía base alguna

---

[4]    Íd., pág. 64.

[5]    Valga señalar que el DACo desestimó la querella respecto al resto de los co-querellados por no exponer una reclamación que ameritara la concesión de un remedio. Íd.

[6]    Este término comenzaría a contarse a partir del término de diez (10) días concedido a USAA Federal Savings Bank (USAA o peticionaria) para que emitiera una certificación sobre la cuantía pagada por la señora Otero Rivera en cuanto a las mensualidades efectuadas para el financiamiento del vehículo. Íd.

[7]    Íd.

[8]    Por su parte, el 28 de octubre de 2021, Flagship también presentó una moción de reconsideración mediante la cual sostuvo que el DACo erró al determinar que las fallas del vehículo de motor no se subsanaron con éxito y al validar un informe de inspección preparado por un técnico automotriz. Véase *Moción [de] reconsideración*, Apéndice del *certiorari*, pág. 83.

en el expediente para concluir que la recurrida financió su vehículo mediante un contrato de venta condicional a plazos. Asimismo, USAA alegó que el acuerdo que suscribió directamente con la señora Otero Rivera fue un contrato de préstamo, por lo que la Ley Núm. 68 de 19 de junio de 1964, según enmendada, conocida como Ley de Ventas a Plazos y Compañías de Financiamiento, *supra*, no era aplicable. Por ende, la peticionaria adujo que, al no haberse aportado prueba de que Flagship le cedió un contrato de venta condicional a plazos, era erróneo concluir que debía responder solidariamente ante la señora Otero Rivera por los pagos efectuados. Por esta razón, solicitó la desestimación de la querella en su contra.[9]

El 13 de enero de 2023, el DACo emitió una *Resolución en reconsideración y Orden final* mediante la cual proveyó no ha lugar a la mencionada solicitud de reconsideración. En desacuerdo con este dictamen, el 13 de febrero de 2023, USAA presentó una *Solicitud de revisión judicial* ante el Tribunal de Apelaciones. En esencia, reiteró sus argumentos y alegó que la Ley de Ventas a Plazos y Compañías

---

[9] Cabe mencionar que el 8 de noviembre de 2021, el DACo emitió una *Notificación* mediante la cual manifestó que dispondría de las mociones de reconsideración dentro del término de noventa (90) días que establece la ley para resolverlas. No obstante, USAA y Flagship comparecieron ante el Tribunal de Apelaciones el 10 de diciembre de 2021 y el 25 de febrero de 2022, respectivamente, mediante sus recursos de revisión judicial. Así las cosas, el foro apelativo intermedio emitió una *Sentencia* el 18 de abril de 2022 en la que desestimó dichos recursos por falta de jurisdicción bajo el fundamento de que el DACo no logró notificar adecuadamente a todas las partes. Por lo tanto, el Tribunal de Apelaciones devolvió el caso ante la agencia para que notificara correctamente a todas las partes. Véase *Sentencia* emitida por el Tribunal de Apelaciones, Apéndice del *certiorari*, págs. 87-98.

de Financiamiento, *supra*, no aplicaba debido a la inexistencia de un contrato de venta condicional a plazos entre Flagship y la señora Otero Rivera que le fuera cedido. En ese sentido, la peticionaria reafirmó que el DACo erró al concluir que era responsable solidariamente por la devolución de las prestaciones frente a la recurrida.

El 10 de abril de 2023, el Tribunal de Apelaciones emitió una *Sentencia* en la que confirmó el dictamen recurrido.[10] El foro apelativo intermedio expuso que, como regla general, en los contratos de compraventa de vehículos de motor el vendedor le cede a una entidad financiera su posición frente al comprador a cambio del pago inmediato del precio. Así pues, manifestó que cuando se cede un contrato de compraventa condicional, el cesionario se subroga en los derechos del cedente y asume las obligaciones que éste tenga para con el comprador al momento de la cesión. También, destacó que la Ley de Ventas a Plazos y Compañías de Financiamiento, *supra*, no permite que el vendedor que cede su posición quede totalmente liberado de responsabilidad frente a la parte compradora por actuaciones previas que afecten tanto los intereses del comprador como los de la entidad financiera o cesionaria.

---

[10] El Tribunal de Apelaciones consolidó los recursos de revisión presentados por Flagship y la peticionaria ante la existencia de hechos y planteamientos comunes. *Resolución* emitida por el Tribunal de Apelaciones, Apéndice del *certiorari*, pág. 140.

En conformidad con lo expuesto, el Tribunal de Apelaciones concluyó que no había prueba en el expediente que demostrara que la compraventa del vehículo de motor se efectuó a través de un acuerdo distinto al de un contrato de compraventa a plazos. Además, resolvió que el DACo no erró al determinar que USAA respondía solidariamente con Flagship ante la señora Otero Rivera. Así las cosas, el 25 de abril de 2023, USAA presentó una moción de reconsideración, la cual fue denegada mediante una *Resolución* emitida el 11 de mayo de 2023 y notificada el 17 de mayo de 2023.

Inconforme, el 15 de junio de 2023, la peticionaria presentó ante este Tribunal una *Petición de certiorari para revisión judicial de decisión administrativa* y planteó los errores siguientes:

> Erró el [Tribunal de Apelaciones] al confirmar la resolución del DACo que concede un remedio contra USAA bajo una ley que no aplica al contrato de pr[é]stamo que otorgó con la querellante, sin apoyo alguno en el expediente del caso, sin que ello fuera alegado ni probado, y en perjuicio de USAA que no tuvo notificación adecuada de que se buscaba un remedio bajo la Ley de Ventas de Mercancías y Servicios al por Menor a Plazos y Compañías de Financiamiento y no como parte con interés por tener un gravamen sobre el vehículo financiado.

> Erró el [Tribunal de Apelaciones] al confirmar la resolución del DACo que concluye que la compra del vehículo se financió mediante un contrato de venta condicional a plazos regulado por la Ley Núm. 68 del 19 de junio de 1964, según enmendada.[11]

---

[11] *Petición de certiorari para revisión judicial de decisión administrativa*, pág. 8.

En reconsideración, expedimos el recurso de *certiorari* solicitado.[12]   Con el beneficio de los alegatos de las partes, procedemos a exponer el marco legal aplicable.

## II

### A.  La doctrina de revisión judicial

Es norma reiterada que los tribunales apelativos están llamados a conceder amplia deferencia a las decisiones de las agencias administrativas.   Esto se debe a la experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado.   Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 126 (2019); Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018).  De esta forma, hemos destacado que las decisiones de las agencias administrativas poseen una presunción de regularidad y corrección, por lo cual deben ser respetadas, a no ser que la parte que las impugne presente prueba suficiente para rebatir tal presunción. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Capó Cruz v. Jta. Planificación *et al.*, 204 DPR 581, 591 (2020); Rolón Martínez v. Supte. Policía, *supra*.

En particular, la Sec. 4.5 de la Ley Núm. 38-2017, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9675, expone el marco rector aplicable a la

---

[12]   En cuanto a la *Moci[ó]n en solicitud de desestimaci[ó]n* presentada el 25 de enero de 2024 por la recurrida, se provee no ha lugar. Respecto a la *Moción solicitando autorización para presentar oposición a moción de desestimación* presentada el 29 de enero de 2024 por USAA, nada que proveer.

revisión judicial de las determinaciones de las agencias administrativas. Este régimen normativo se fundamenta en el principio de la razonabilidad para determinar si la actuación de la agencia es arbitraria, ilegal o irrazonable a tal grado que se considere un abuso de discreción. Rolón Martínez v. Supte. Policía, *supra*. Así pues, la revisión judicial de una decisión administrativa se circunscribe a analizar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por prueba sustancial que surgió del expediente administrativo, y **(3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas.** Íd., págs. 35-36.

Ahora bien, la deferencia hacia las determinaciones administrativas no se extiende automáticamente a las conclusiones de derecho de la agencia, **pues los tribunales apelativos tienen la facultad de revisar las conclusiones de derecho en todos sus aspectos.** ECP Incorporated v. OCS, *supra*, págs. 281-282. Véase, además, Sec. 4.5 de la LPAU, *supra*. Ciertamente, esto no implica que los tribunales revisores tienen libertad absoluta para descartar las conclusiones e interpretaciones de dicho organismo administrativo. Otero v. Toyota, 163 DPR 716, 729 (2005). Por lo tanto, **la interpretación de la agencia no prevalecerá cuando produzca resultados incompatibles o contrarios al propósito del estatuto interpretado y a su**

**política pública.** Moreno Lorenzo y otros v. Depto. Fam. 207 DPR 833, 843 (2021). En esa misma línea, "los tribunales tienen que armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable". (Escolio omitido). Íd.

**B. Ley de Ventas a Plazos y Compañías de Financiamiento**

La Ley Núm. 68 de 19 de junio de 1964, según enmendada, conocida como Ley de Ventas a Plazos y Compañías de Financiamiento, 10 LPRA sec. 731 *et seq.*, regula lo relacionado a los contratos de venta al por menor a plazos celebrados entre un comprador y un vendedor, así como la relación jurídica de las compañías de financiamiento que intervienen en las transacciones de venta a crédito, sobre los bienes muebles y servicios. Conviene destacar que esta ley se creó con el fin primordial de proteger a los consumidores de cargos excesivos de financiamiento y conservar un margen razonable de beneficios que estimulara la economía.[13]

El contrato de venta condicional es una modalidad particular de la compraventa con reserva de dominio y más específicamente de la llamada venta a plazos. Berríos v.

---

[13] Diario de Sesiones de la Asamblea Legislativa, T. 3, págs. 1677-1678 (1964). Véase, además, W. Torres Bill, *Ventas a plazos*, San Juan, [s. Ed.], 1992, pág. 5 (citando el Informe de las Comisiones de Comercio e Industrias, de Hacienda y de lo Jurídico en relación con el P. de la C. 828, Reglamentación de Ventas al Por Menor a Plazos y las Compañías de Financiamiento, 16 de mayo de 1963, pág. 15).

Tito Zambrana Auto, Inc., 123 DPR 317, 326 (1989). Mediante estos acuerdos de ventas a plazos y financiamiento se crea una relación tripartita entre el comprador, el vendedor y la entidad financiera, en la cual la cesión del contrato de venta condicional está prevista desde que se perfecciona la compraventa original. Íd., págs. 328-329. La finalidad de la cesión es la transmisión de la titularidad del contrato de venta condicional del cedente al cesionario con sus derechos y obligaciones hasta que el comprador pague la totalidad del precio. Íd., pág. 329.

La ley define el término "compañía de financiamiento" de la forma siguiente:

> Significa una persona que se dedique total o parcialmente, directa o indirectamente, al negocio de comprar o de otra manera adquirir contratos de ventas al por menor a plazos o intereses sobre los mismos, otorgados por otras personas […]. Art. 101(15) de la Ley de Ventas a Plazos y Compañías de Financiamiento, 10 LPRA sec. 731(15).

A tenor de lo expuesto, y en lo pertinente a la presente controversia, una vez perfeccionada la compraventa a plazos de un vehículo de motor, el vendedor le cede a una entidad financiera su posición frente al comprador a cambio del pago inmediato del precio. Berríos v. Tito Zambrana Auto, Inc., *supra*, pág. 328. En efecto, la actividad que consiste en el otorgamiento del financiamiento al comprador "transforma la operación para el vendedor prácticamente en una venta al contado y lo que deja subsistente es la obligación de pago en los plazos convenidos al quedar el comprador deudor de la entidad financiera cesionaria".

Íd., pág. 329. Si bien en ocasiones el vendedor funge como intermediario entre el comprador y el financiador, una modalidad de la denominada relación tripartita también se configura cuando "el comprador debe procurarse el crédito por sí mismo, acudiendo, ya sea a un banco con el que tenga vinculaciones, o bien a una compañía de financiamiento".[14]

En algunas ocasiones, el vendedor o cedente permanece vinculado a la operación luego de la transacción, mientras que en otras pudiese desaparecer totalmente.[15] De acuerdo con la doctrina civilista, la cesión del contrato produce para el cedente un efecto liberatorio frente al deudor, por lo cual el cedido no conserva ante el cedente obligación o derecho alguno que no sea el pacto accidental de garantía por el cumplimiento. Berríos v. Tito Zambrana Auto, Inc., *supra*, pág. 330.

En el caso específico de las ventas al por menor a plazos en Puerto Rico, la ley no permite (entre otras prohibiciones) que el comprador releve al vendedor de la responsabilidad que este último pudiera tener dentro de los términos del contrato o cualquier otro documento otorgado en conexión con el mismo. Art. 209(f) de la Ley de Ventas a Plazos y Compañías de Financiamiento, 10 LPRA sec. 749(f). Por tal motivo, "**el cedente es responsable de asegurar el patrimonio del cesionario que nada [h]a**

---

[14] S. Litvinoff, *Las ventas a plazos en el derecho puertorriqueño*, New Hampshire, Equity Publishing Corporation, 1965, pág. 37.

[15] Íd., págs. 36-37.

**tenido que ver con la perfección del contrato base**". (Negrilla suplida).[16] De esa forma, hemos reconocido que los miembros de la Asamblea Legislativa instituyeron una figura de cesión de contratos atípica o *sui géneris* al crear esta ley. Berríos v. Tito Zambrana Auto, Inc., *supra*.

Además, al contemplar la posición del cesionario, la Asamblea Legislativa dispuso que en el contenido del contrato deberá darse a conocer el aviso siguiente:

> Aviso al Cesionario—El cesionario que reciba o adquiera el presente contrato al por menor a plazos o un pagaré relacionado con éste, **quedará sujeto en igualdad de condiciones a cualquier reclamación o defensa que el comprador pueda interponer en contra del vendedor**. El cesionario del contrato tendrá derecho a presentar contra el vendedor todas las reclamaciones y defensas que el comprador pueda levantar contra el vendedor de los artículos o servicios. (Negrilla suplida). Art. 202(4) de la Ley de Ventas a Plazos y Compañías de Financiamiento, 10 LPRA sec. 742(4).

Esta disposición se incluyó por primera vez en 1972, mediante el antiguo inciso (5), a raíz de la aprobación del P. de la C. 1388 para fortalecer la posición de los consumidores. Véase Berríos v. Tito Zambrana Auto, Inc., *supra*, pág. 334. El texto originalmente hacía referencia a la hoy extinta figura del "cesionario de buena fe" o el llamado "holder in due course" del derecho consuetudinario (*common law*).[17] Desde entonces, "los proponentes de esta

---

[16] J.A. Cuevas Segarra, *La Ley de Ventas Condicionales de Puerto Rico, Jurisprudencia*, 29 Rev. Der. P.R. 185, 190 (1989).

[17] El artículo originalmente leía como sigue:

enmienda [sostenían] que una de las causales de mayor abuso contra el consumidor e[ra] el uso de la doctrina del tenedor de buena f[e] mediante la cual las financieras continua[ban] cobrando la deuda de un consumidor que t[enía] una defensa legítima [en] contra [de] su vendedor, bien sea porque la mercancía e[ra] defectuosa, o porque no le ha[bía] sido entregada". Informe Conjunto, Comisiones de Desarrollo Socioeconómico y Jurídico Civil, 24 de abril de 1972, pág. 3. De este modo, un año más tarde se eliminó la figura del "tenedor de buena fe" mediante la aprobación de la Ley Núm. 69 de 31 de mayo de 1973.[18]

Al amparo de la disposición objeto de análisis, el cedido o comprador actualmente tiene la facultad de oponer contra el cesionario o entidad financiera las mismas reclamaciones o defensas que en derecho tuviera contra el vendedor.[19] Lo anterior incluye, por supuesto, la

---

"Aviso al Cesionario—El cesionario que reciba o adquiera el presente contrato al por menor a plazos o un pagaré relacionado con éste, quedará sujeto en igualdad de condiciones a cualquier reclamación o defensa que el comprador pueda interponer en contra del vendedor, **excepto cuando se trate de un cesionario de buena fe, según definido en la sección 22 del artículo 101 de esta ley**. El cesionario del contrato tendrá derecho a presentar contra el vendedor todas las reclamaciones y defensas que el comprador pueda levantar contra el vendedor de los artículos o servicios". (Negrilla suplida). Art. 202(5) de la Ley Núm. 78 de 31 de mayo de 1972 (1972 Leyes de Puerto Rico 180).

[18] Posteriormente, la Ley Núm. 258-1999 renumeró el antiguo inciso (5) como el inciso (4).

[19] Para establecer un equilibrio ante la eliminación de la figura del "tenedor de buena fe", la ley le impuso al comprador la obligación de notificar al cesionario cualquier causa de acción o defensa que surgiera de la venta. Art. 209(a)(3) de la Ley Núm. 68 del 19 de junio de 1964, según enmendada, conocida como Ley de Ventas a Plazos y Compañías de Financiamiento, 10 LPRA sec. 749(a)(3). Véase, además, Berríos v. Tito Zambrana Auto, Inc., 123 DPR 317, 334-335 (1989).

utilización de la figura jurídica de la resolución, la cual "deshace el vínculo obligatorio nacido del contrato cuando se cumple una condición resolutoria, o cuando por dejar de cumplir una de las partes la obligación que le corresponde, la otra parte queda facultada para desligarse de la correlativa".[20] En términos prácticos, cuando se configura la condición resolutoria que se encuentra implícita en todo contrato bilateral, procede la restitución de lo que las partes hubiesen percibido. Véanse: Arts. 1076 y 1077 del Código Civil de 1930, 31 LPRA ant. secs. 3051 y 3052.[21]

En armonía con lo anterior, hemos manifestado que, aunque mantengan su independencia formal, existe una estrecha conexión funcional entre el contrato de venta condicional a plazos y el de financiamiento de tal manera que la ineficacia de alguno hace desaparecer la razón de existir del otro. Véase Berríos v. Tito Zambrana Auto, Inc., *supra*, pág. 336. A modo ilustrativo, la ley en protección del consumidor en España reconoce que "la ineficacia del contrato cuyo objeto sea la satisfacción de una necesidad de consumo determinará también la ineficacia del contrato expresamente destinado a su financiación".[22]

---

[20]   J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 320.

[21]   Los hechos de este caso ocurrieron durante la vigencia del Código Civil de 1930, 31 LPRA ant. sec. 1 *et seq*., por lo cual nos referimos a sus disposiciones.

[22]   J.L. Lacruz Berdejo y otros, *Elementos de Derecho Civil II: derecho de obligaciones*, 5ta ed., Madrid, Dykinson, 2013, Vol. 2, pág. 172 (haciendo referencia al Art. 26 de la Ley 16/2011, de 24 de junio).

Además, hay que tener en cuenta que a la cesión de contratos "le son aplicables los principios de la teoría general".[23] De esta manera, el efecto relativo a la privación de eficacia normal en la cesión consiste en **<u>volver las cosas a su antiguo estado</u>**". (Negrilla y subrayado suplidos).[24]

## C. La resolución en los contratos de compraventa de vehículos de motor

La Ley Núm. 7 de 24 de septiembre de 1979, según enmendada, conocida como Ley de Garantías de Vehículos de Motor, 10 LPRA sec. 2051 *et seq.*, se aprobó para asegurar que los automóviles nuevos adquiridos en Puerto Rico tuvieran las mismas garantías de fábrica que se otorgan en Estados Unidos. Art. 3 de la Ley de Garantías de Vehículos de Motor, 10 LPRA sec. 2053. Por consiguiente, el distribuidor o vendedor del vehículo viene obligado a prestar efectivamente los servicios de garantía de fábrica. Art. 11 de la Ley de Garantías de Vehículos de Motor, 10 LPRA sec. 2061.

Por su parte, el DACo quedó investido con la facultad de adoptar las reglas y los reglamentos necesarios para cumplir los propósitos de esta ley, en conformidad con los poderes conferidos por la Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como Ley Orgánica del Departamento de Asuntos del Consumidor. Art. 13 de la Ley

---

[23] M. García Amigo, *La cesión de contratos en el Derecho español*, Madrid, Ed. Rev. Der. Privado, 1963, pág. 361.

[24] <u>Íd.</u>, pág. 390.

de Garantías de Vehículos de Motor, 10 LPRA sec. 2063. En el ejercicio de su autoridad, el DACo aprobó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159 de 6 de junio de 2006. Este Reglamento se promulgó con el fin de: (1) proteger a los consumidores y sus inversiones en la adquisición de vehículos de motor; (2) procurar que los vehículos de motor sirvan para el fin de su adquisición y que reúnan las condiciones mínimas para garantizar la protección de la vida y la propiedad, y (3) prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico. Regla 2 del Reglamento de Garantías de Vehículos de Motor, *supra*.

En lo pertinente, el Reglamento dispone lo siguiente:

> **El Departamento podrá, a opción del comprador, decretar la resolución del contrato** o reducir proporcionalmente el precio de venta **de acuerdo con el Código Civil de Puerto Rico, en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos.** Lo que constituye una oportunidad razonable para reparar se determinará tomando en consideración las circunstancias particulares de cada caso. (Negrilla suplida). Regla 22 del Reglamento de Garantías de Vehículos de Motor, *supra*.

Por su parte, la única referencia de manera expresa que hemos podido hallar en este Reglamento sobre la imposición de responsabilidad solidaria al cesionario del contrato de compraventa surge en torno a la obligación de entregar los

documentos necesarios para la inscripción del vehículo de motor.[25]

**D. La solidaridad en las obligaciones**

Según los sujetos que componen la relación, las obligaciones pueden ser de naturaleza mancomunada o solidaria. Quílez-Velar *et al.* v. Ox Bodies, Inc., 198 DPR 1079, 1084 (2017). Cuando se trata de una obligación mancomunada, cada deudor cumple con su parte de la deuda de manera independiente, mientras que en una obligación solidaria, cada deudor tiene el deber de satisfacer la totalidad del crédito que posee el acreedor. Íd.; Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365, 375 (2012). En nuestro ordenamiento jurídico impera el reconocido principio de que la solidaridad no se presume. A tales efectos, el Art. 1090 del Código Civil de 1930, 31 LPRA ant. sec. 3101,[26] aplicable a este caso, dispone lo siguiente:

> La concurrencia de dos (2) o más acreedores o de dos (2) o más deudores en una sola obligación no implica que cada uno de aquéllos tenga derecho

---

[25] Específicamente, el Reglamento de Garantías de Vehículos de Motor dispone lo siguiente:

"Todo vendedor al detal de un vehículo de motor someterá al Departamento de Transportación y Obras Públicas toda la documentación exigida por ley para su inscripción dentro de los treinta (30) días siguientes a la fecha de venta. **Todo cesionario del contrato de compraventa de un vehículo de motor responderá solidariamente con el vendedor de esta obligación**". (Negrilla suplida). Regla 8 del Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159 de 6 de junio de 2006.

[26] El nuevo Código Civil de 2020 recoge este principio en el Art. 1096, 31 LPRA sec. 9055, al disponer que "[e]n virtud de lo dispuesto expresamente en la obligación o en la ley puede exigirse a cada uno de los deudores, o por cada uno de los acreedores, el total de la prestación".

a pedir ni [que] cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. **Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria**. (Negrilla suplida).

En otras palabras, la presunción existente es de mancomunidad, a no ser que se pacte lo contrario. Íd. Como sabemos, la solidaridad puede nacer de la ley o de la voluntad expresa de las partes en el negocio jurídico formado. Véase Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 380. En específico, hemos determinado que la solidaridad constituye una excepción en el régimen contractual, por lo que la obligación no podrá ser considerada como solidaria, a menos que surja de una manera clara y evidente. Gen. Accid. Ins. Co. P.R. v. Ramos, 148 DPR 523, 537 (1999).

A la luz del marco jurídico expuesto, resolvemos.

## III

En lo que concierne a la controversia ante nos, USAA alega que el Tribunal de Apelaciones erró al confirmar la *Resolución* del DACo en la cual invocó la Ley de Ventas a Plazos y Compañías de Financiamiento, *supra*, para decretar la resolución del contrato de financiamiento. Fundamenta su contención en la presunta inexistencia de un contrato de venta a plazos que le fuera cedido. De igual forma, la peticionaria sostiene que la querella presentada por la señora Otero Rivera únicamente incluía reclamaciones en contra del vendedor del vehículo de motor, por lo cual no hubo una notificación adecuada, privando así a USAA de la

oportunidad de presentar defensas y prueba a su favor. Por último, cuestiona la conclusión de derecho de la agencia al resolver que debía responder de forma solidaria junto a Flagship frente a la recurrida por la devolución de las prestaciones tras decretarse la resolución de los mencionados contratos.

Por su parte, la señora Otero Rivera aduce que la *Sentencia* emitida por el Tribunal de Apelaciones, al igual que la determinación del DACo, no fue arbitraria, ilegal o irrazonable. Afirma que el dictamen es cónsono con la documentación que obra en el expediente del caso. Particularmente, la recurrida indica que sí suscribió un contrato de venta condicional con Flagship para la adquisición de un vehículo de motor cuyo financiamiento estaría a cargo de la peticionaria. Por otra parte, en cuanto a la devolución de las prestaciones, argumenta que USAA debe responder solidariamente con Flagship por ser la cesionaria del contrato bajo la Ley de Ventas a Plazos y Compañías de Financiamiento, *supra*. A la luz del estándar de revisión discutido, procedemos a atender los planteamientos en estricto derecho.

Según señaláramos en la exposición del derecho aplicable, el contrato de venta condicional en las compraventas de automóviles constituye una modalidad específica de la mencionada venta a plazos. Surge del expediente que el negocio de la compraventa del vehículo de motor entre la señora Otero Rivera y Flagship se llevó

a cabo mediante la figura del contrato de venta condicional

por el precio de $36,200.[27]   Específicamente, sobre este

negocio jurídico se dispuso lo siguiente:

> En caso de que el comprador exprese su opción
> por cierta financiadora particular para el
> financiamiento del balance de esta venta, se le
> conceden 10 días de esta fecha para traer a la
> vendedora el [i]mporte de este balance y en caso
> de transcurrir dicho término sin que se haya
> pagado dicho balance la vendedora quedará en
> libertad de (1) utilizar cualquier entidad
> financiadora para cobrarse dicho balance
> (2) [r]equerir la devolución y/o reposesión de la
> unidad cobrándosele al comprador por una suma
> correspondiente a su uso y depreciación o
> (3) cualquier otro remedio o derecho conferido a
> la vendedora.[28]

Una vez se perfeccionó el contrato de venta, la

peticionaria financió el precio de compra del vehículo.[29]

De esta forma, Flagship le cedió su posición a USAA frente

a la recurrida a cambio del pago inmediato del precio por

motivo del financiamiento del vehículo, según previsto

originalmente.[30]   Por tanto, es forzoso concluir que el

Tribunal de Apelaciones no erró al determinar que la

peticionaria es la cesionaria del contrato de venta a

---

[27]   Según la determinación de hecho núm. 4 de la *Resolución* emitida por el DACo el 6 de octubre de 2021, "[e]l precio del vehículo fue de $33,30[0].   No se marcó en la orden de venta ningún equipo extra incluido.   Se anotó la cantidad de $2,900 bajo un encasillado que lee 'contrato de servicio', y como balance a financiar la suma de $36,200". Apéndice del *certiorari*, pág. 60.   Véase, además, *Orden de venta*, Apéndice del *certiorari*, pág. 12.

[28]   *Orden de venta*, Apéndice del *certiorari*, pág. 12.

[29]   Determinación de hecho núm. 6 de la *Resolución* emitida por el DACo el 6 de octubre de 2021, Apéndice del *certiorari*, pág. 60.

[30]   De los propios documentos presentados por USAA surge la modalidad contractual siguiente: "Balance – Contrato a pagarse de acuerdo con [el] contrato de venta condicional [e] institución financiera USAA". *Orden de venta*, Apéndice del *certiorari*, pág. 12.

plazos en conformidad con la Ley de Ventas a Plazos y Compañías de Financiamiento, *supra*.

Por otro lado, no nos persuade el argumento de USAA a los efectos de que la reclamación no le fue notificada adecuadamente por carecer de alegaciones específicas en su contra. Según se desprende del expediente, previo a la presentación de la querella, la recurrida le notificó diligentemente a USAA sobre los problemas mecánicos del automóvil objeto de la compraventa y la posible presentación de la querella correspondiente.[31] Además, tanto las alegaciones como el remedio solicitado por la señora Otero Rivera eran suficientes para ilustrar a grandes rasgos la naturaleza de su reclamación. Sin duda alguna, la peticionaria pudo haber presentado oportunamente ante el DACo cualquier defensa o prueba a su favor, si la hubiese tenido disponible, pero optó por no hacerlo.

No obstante, **sí coincidimos en parte con la apreciación de USAA en torno al planteamiento de que no debe responder <u>solidariamente</u> con el vendedor del vehículo de motor frente a la señora Otero Rivera por la devolución de las prestaciones a raíz de la resolución de los contratos.** Como ya indicamos, el Art. 202(4) de la Ley de Ventas a Plazos y Compañías de Financiamiento, *supra*, dispone que un cesionario queda sujeto en igualdad de condiciones a

---

[31] *Carta de 8 de junio de 2020*, Apéndice del *certiorari*, págs. 26-27.

cualquier reclamación o defensa que el comprador pueda presentar en contra del vendedor. Nótese que esto sólo implica que un consumidor que tenga una causa de acción legítima contra un vendedor podría también oponer su derecho frente a la entidad financiera que gestiona el cobro de la deuda. En ese sentido, las entidades financieras y los bancos que advienen cesionarios no quedan liberados de los efectos jurídicos implicados cuando, por ejemplo, los consumidores reclaman la nulidad o ineficacia del contrato original. Al mismo tiempo, la ley mantiene la responsabilidad del cedente para asegurar el patrimonio del cesionario.

Ahora bien, de una interpretación del texto de la citada disposición y del propósito detrás de su aprobación no se desprende una clara intención legislativa de establecer un vínculo de solidaridad entre el vendedor (cedente) y la entidad financiera (cesionaria). A su vez, la Ley de Garantías de Vehículos de Motor, *supra*, y el Reglamento de Garantías de Vehículos de Motor, *supra*, **no** disponen expresamente que la cesionaria debe responder de manera solidaria por la devolución de las prestaciones en controversia. Del expediente tampoco surge documento alguno que acredite que la relación de la peticionaria con Flagship era de solidaridad. En ausencia de una voluntad manifiesta a estos fines, y bajo el precepto de que la solidaridad no se presume en nuestro ordenamiento jurídico, resolvemos que en esta relación contractual *sui géneris*

opera la presunción de mancomunidad en cuanto a la obligación de responder por la devolución de las prestaciones.

Así pues, determinamos que la imposición de responsabilidad solidaria en estos casos no procede por ser contraria en derecho. Resolver lo contrario sería incompatible con el texto y con el propósito de las leyes y el reglamento, según interpretados. En consecuencia, resolvemos que en casos como éste cada parte deberá devolver lo que le corresponda, a saber: (1) el vendedor del vehículo de motor deberá devolverle al consumidor cualquier dinero por concepto de depósito o "trade in", si alguno, y devolverle a la entidad financiera el dinero recibido del préstamo; (2) la entidad financiera deberá devolverle al consumidor los pagos mensuales efectuados por el financiamiento del vehículo de motor, y (3) el consumidor deberá devolverle al vendedor el vehículo de motor. De esta manera, armonizamos el texto estatutario y reglamentario aplicable para llegar a un resultado justo, sensato, lógico y razonable.

## IV

Por los fundamentos que anteceden, se modifica la *Sentencia* emitida por el Tribunal de Apelaciones el 10 de abril de 2023 a los únicos fines de eliminar la imposición de responsabilidad solidaria a USAA junto al vendedor, por lo que cada cual deberá devolver sus prestaciones de manera

independiente, según la parte que le corresponda.   Así modificada, se confirma la *Sentencia* recurrida.

Se dictará Sentencia en conformidad.


ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Itzaira Otero Rivera

    Recurrida

      v.

Bella Retail Group, Inc. h/n/c Flagship Chrysler Bayamón, FCA US LLC h/n/c Chrysler de Puerto Rico; USAA Federal Savings Bank; Assurant Services of PR, Inc.

    Peticionarios

CC-2023-371

*Certiorari*

SENTENCIA

En San Juan, Puerto Rico, a 24 de junio de 2024.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se modifica la Sentencia emitida por el Tribunal de Apelaciones el 10 de abril de 2023 a los únicos fines de eliminar la imposición de responsabilidad solidaria a USAA Federal Savings Bank junto a Bella Retail Group Inc. d/b/a Flagship, por lo que cada cual deberá devolver sus prestaciones de manera independiente, según la parte que le corresponda. Así modificada, se confirma la *Sentencia* recurrida.

    Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo