ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES<br>Recurrido<br><br>V.<br><br>ÁNGEL RODRÍGUEZ TORRES, ÁNGEL RODRÍGUEZ RODRÍGUEZ, ROSSANA RODRÍGUEZ RODRÍGUEZ<br>Recurrente | TA2025AP00234 | *Apelación* acogida como *Revisión Administrativa* procedente del Departamento de Recursos Naturales y Ambientales<br><br>Núm. 05-054-ZMT<br><br>Sobre:<br>Violación al Artículo 5(b) de la Ley 23 del 20 de junio de 1972, según enmendada; al Artículo 4, Sec. 4.2 del Reglamento 4860 de 29 de diciembre de 1992, Reglamento para el Aprovechamiento, Vigilancia, Conservación y Administración de las Aguas Territoriales, Los Terrenos Sumergidos Bajo Estas y la Zona Marítimo Terrestre |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de octubre de 2025.

Comparece ante esta Curia, el señor Ángel Rodríguez Rodríguez (Recurrente) y solicita que dejemos sin efecto la *Resolución* que el Departamento de Recursos Naturales y Ambientales (DRNA) emitió el 27 de agosto de 2024 y depositó en el correo postal el 5 de septiembre de 2024, la cual fue objeto de reconsideración. En su dictamen, el DRNA acogió el Informe de la Oficial Examinadora, impuso al Recurrente y a la señora Rosanna Rodríguez Rodríguez (co-querellados) una multa de cinco mil dólares

($5,000.00) y les ordenó remover la estructura construida en la zona marítimo terrestre.

Adelantamos que, luego de examinar el recurso, resolvemos confirmar la determinación administrativa recurrida. Veamos.

## I.

El 28 de febrero de 2005, el DRNA instó la *Querella* de epígrafe en contra del señor Ángel Rodríguez Torres (señor Rodríguez Torres). En ella, le imputó haber infringido el Artículo 5(h) de la Ley Núm. 23 de 20 de junio de 1972, Ley Orgánica del Departamento de Recursos Naturales y Ambientales, 3 LPRA sec. 155(h), y la Sección 4.2 del Reglamento Núm. 4860, *Reglamento para el aprovechamiento, vigilancia, conservación y administración de las aguas territoriales, los terrenos sumergidos bajo estas y la zona marítimo terrestre*. Lo antes, por construir o poseer, sin permiso o concesión del DRNA, un muelle en un área de mangle, adyacente a la Reserva de Investigaciones Estuarinas de Bahía de Jobos en el Municipio de Guayama.

Luego de las partes realizar intentos infructuosos de negociación, el señor Rodríguez Torres contestó la querella. Una vez finalizado el descubrimiento de prueba, el señor Rodríguez Torres instó una *Moción de desestimación o para que se disponga sumariamente de la querella,* a la cual se opuso la parte recurrida. Evaluadas las posturas de ambas partes, el DRNA denegó el petitorio de desestimación y ordenó la celebración de una vista administrativa para el 11 de septiembre de 2007. Llegado el día, el Recurrente compareció para informar el fallecimiento de su padre, el señor Rodríguez Torres, ocurrido el 23 de agosto de 2007.[1] En reacción, el DRNA propuso al Recurrente los mismos términos de negociación ofrecidos al señor Rodríguez Torres, de lo contrario, enmendaría la querella para sustituirlo por sus herederos.

---

[1] Según el Recurrente, durante la vista celebrada el 11 de septiembre de 2007, proveyó al DRNA las direcciones de ambos co-querellados.

Transcurridos más de cuatro (4) años, el 30 de abril de 2012, la *Querella* fue reasignada a otra Oficial Examinadora, quien señaló una vista de seguimiento para el 10 de julio de 2012.[2] Distinto a lo que nos representó en su recurso, surge del expediente que, durante su comparecencia al referido señalamiento y, a petición de la agencia, el Recurrente proveyó su dirección postal y física, al igual que la de la señora Rosanna Rodríguez Rodríguez.[3] A esos efectos, el 11 de julio de 2012, el DRNA enmendó la querella para añadir como parte querellada al Recurrente y a su hermana, la señora Rosanna Rodríguez Rodríguez y la remitió, mediante correo certificado con acuse de recibo, a ambos co-querellados a las direcciones que ofreció el Recurrente.[4] No obstante lo anterior, el envío a la señora Rosanna Rodríguez Rodríguez no fue reclamado, por lo que fue devuelto a la agencia por el servicio postal como "unclaimed".[5] Según requirió la Oficial Examinadora, la agencia realizó esfuerzos para notificar personalmente, los cuales resultaron infructuosos.[6]

Celebrada la vista adjudicativa, el 29 de mayo de 2018, la Oficial Examinadora del DRNA suscribió su correspondiente informe, el 13 de abril de 2022. En este, recomendó la imposición de una multa de cinco mil dólares ($5,000.00) en contra de los co-querellados por estos violentar el Artículo 5(h) de la Ley Núm. 23 *supra,* y el Artículo 4.2 del Reglamento Núm. 4860. De conformidad, mediante una *Resolución,* emitida el 27 de agosto de 2024, el DRNA acogió el *Informe de la Oficial Examinadora,* impuso la multa recomendada y ordenó a los co-querellados demoler la estructura objeto de esta querella.

---

[2] *Alegato* del DRNA presentado el 25 de septiembre de 2025, Anejo XXIV.
[3] *Alegato* del DRNA, Anejo XXV.
[4] *Alegato* del DRNA, Anejo XXVII, págs. 113-114.
[5] *Alegato* del DRNA, Anejo XXVII, pág. 118.
[6] *Alegato* del DRNA, Anejo XXIX. Se colige del *Informe de Trabajo* que completó el señor Kiven Ocasio del Cuerpo de Vigilantes del DRNA, fechado el 25 de enero de 2013, que logró acceso por otro residente. Expresó que en el complejo residencial no concuerda la dirección postal con el número de apartamento. Añadió que, según el agente Jorge M. Rodríguez, el apartamento correspondiente al apartado 481 es el 10-38 y que el sargento de turno del Condominio Villas de Hato Tejas le indicó que la persona intervenida se encontraba de vacaciones.

Oportunamente, el 25 de septiembre de 2024, el Recurrente instó ante el organismo administrativo un petitorio de reconsideración y desestimación. Cuestionó la demora excesiva de la Oficial Examinadora en rendir su Informe y del DRNA en emitir su dictamen, en consideración a la fecha de la vista en su fondo y a cuándo se instó la presente querella. Adujo que, el DRNA no acreditó los esfuerzos razonables para notificar su *Resolución* a la co-querellada, la señora Rosanna Rodríguez Rodríguez. Discutió que, el Reglamento Núm. 4860 no contiene un Artículo 1.4(D) que establezca cuáles son los usos o aprovechamientos de bienes de dominio público marítimo-terrestre, tal cual lo representa el Artículo 4.2 del referido Reglamento. Sustentado en lo anterior, argumentó que el Artículo 4.2 cuya violación se le imputa es una disposición ambigua.

Evaluado lo anterior, la Oficial Examinadora rindió un *Informe de la Oficial Examinadora*, el 7 de mayo de 2025, en el cual consignó las siguientes determinaciones de hechos:

1. La parte querellada por sí y/o a través de sus empleados, agente, causahabientes, construyó y/o posee un muelle en forma de S, de aproximadamente 37.8, 24.2 y 18.6 de largo por 4.1 pies de ancho adyacente a la Reserva de Investigaciones Estuarinas de Bahía de Jobos sita en el Municipio de Guayama, Puerto Rico.
2. Que el referido muelle ubica en zona marítimo terrestre y terrenos sumergidos.
3. Que la antes mencionada estructura, resulta en un aprovechamiento de bienes del dominio público marítimo terrestre y no cuenta con ningún permiso o concesión suscrito por el Secretario o Secretaria de este Departamento.
4. Que el área donde ubica la estructura objeto de este caso, es área de mangle, los cuales se ven seriamente afectados por esta clase de estructura[.]

En su escrito, la Oficial Examinadora puntualizó que las estructuras objeto de la presente querella no requieren de deslinde por estar sobre terrenos sumergidos. Agregó que, nada impide al DRNA delegar en un Oficial Examinador la redacción de un informe que adjudique el asunto para luego acoger el contenido en su dictamen. Fundamentado en lo anterior, se reiteró en lo dispuesto en su informe previo, emitido en el año 2022. En su consecuencia, recomendó al DRNA denegar el petitorio de reconsideración del

Recurrente. Consistente con lo anterior, el DRNA notificó la *Resolución* impugnada mediante la cual acogió el *Informe de la Oficial Examinadora* y denegó la *Moción solicitando reconsideración y solicitud de desestimación* que instó el Recurrente.

Aún en desacuerdo, el Recurrente insta el recurso de revisión de epígrafe en donde imputa al DRNA lo siguiente:

> Erró el DRNa en demorarse excesivamente en la preparación del Informe del Oficial Examinador, así como la emisión y notificación de la Resolución, objeto de Revisión Judicial.

> Erró el DRNa al emitir una Resolución sin establecer las determinaciones de Hecho y de Derecho que sostienen su determinación, así como notificar a la co-querellada de manera pro-forma, a una dirección que el propio DRNa sabe por años que no la va a recibir.

> Erró el DRNa en su notificación de la "Querella Enmendada" al omitir en el texto de las infracciones imputadas por el DRNa, texto pertinente que hubiera reconocido derechos al Recurrente y hubiese convertido la referida querella en improcedente en derecho.

> Erró el DRNa al declarar HA LUGAR la "Querella Enmendada" basándose en alegadas infracciones a una disposición reglamentaria ambigua y sin haber hecho una determinación de hechos en cuanto a cuándo o si tan siquiera si se realizó el deslinde de la ZMT.

En cumplimiento con nuestra *Resolución,* la parte recurrida comparece mediante su *Alegato* en oposición.[7] Con el beneficio de los escritos de ambas partes, resolvemos.

**II.**

**A. La Revisión Judicial y la Doctrina de la Deferencia Judicial**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. Ahora bien, en el ejercicio de tal facultad, el foro apelativo está obligado a ser

---

[7] El 11 de septiembre de 2025, el DRNA instó un *Alegato* junto a una *Solicitud de solicitando autorización para presentar alegato en exceso del límite reglamentario de páginas.* Evaluado lo anterior y la correspondiente oposición del recurrente, denegamos el referido petitorio por entender que el DRNA no acreditó una justa causa para excederse por el doble del límite que establece nuestro Reglamento. En cumplimiento con nuestro requerimiento, el DRNA insta el Alegato objeto de nuestra consideración, el 25 de septiembre de 2025. Con relación a la nueva oposición presentada el 29 de septiembre de 2025 por el Recurrente y examinado el segundo alegato de la parte recurrida, declaramos No Ha Lugar la *Urgente: Moción Solicitando Remedio.* (Entrada Núm. 10.)

deferente a las determinaciones de los organismos administrativos, en consideración a la experiencia y al conocimiento especializado que estas poseen sobre los asuntos que le fueron delegados. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, resuelto el 27 de marzo de 2025. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56, resuelto el 21 de mayo de 2025.[8] Por último, permite a los foros judiciales velar que los entes administrativos den cumplimiento a los mandatos constitucionales, en especial, al debido proceso de ley. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743 (2024).

Cabe puntualizar que, las agencias administrativas son en muchas ocasiones los primeros intérpretes de las leyes que imperan el ejercicio de su ministerio. *Buxó Santiago v. Oficina de Ética Gubernamental,* 2024 TSPR 130, resuelto el 10 de diciembre de 2024. Sin embargo, los tribunales son los llamados a interpretar las leyes y la Constitución. *Íd.* A modo de excepción, la mencionada deferencia cede ante una interpretación de un organismo administrativo que produzca resultados incompatibles o contrarios a su política pública, o a su propósito interpretado. *Íd.*

Por lo tanto, al revisar una actuación de una agencia administrativa el criterio rector es la razonabilidad. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. De manera que, procede la revisión judicial cuando el organismo administrativo haya actuado de forma arbitraria, ilegal, irrazonable o que haya abusado de su discreción. *Íd.* A tono con lo anterior, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, y la jurisprudencia interpretativa limitan la revisión judicial a tres (3) aspectos: (1) si es apropiado el remedio

---

[8] Véase, además, *Jusino Rodríguez v. Junta de Retiro del Gobierno de Puerto Rico,* 2024 TSPR 138, resuelto el 26 de diciembre de 2024.

concedido; (2) si las determinaciones de hechos están basadas en evidencia sustancial; (3) si las conclusiones de derecho fueron correctas. *Íd.* De conformidad, a tenor de la Sección 3.14 de la LPAU, 3 LPRA sec. 9654, el dictamen final del ente administrativo sujeto a revisión judicial ha de contener la advertencia sobre el derecho a solicitar reconsideración o revisión judicial, adicional a las determinaciones de hechos y a las conclusiones de derecho. *Íd.*

Como vemos, al ejercer su facultad revisora, los tribunales no pueden descartar de forma absoluta el dictamen administrativo sin antes haber examinado la totalidad del expediente y haber determinado que la agencia actuó irrazonablemente al ejercer su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra. Al mismo tiempo, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Íd*; *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* supra. Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado o *expertise* que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Jta Planificación et al.,* 204 DPR 581 (2020). Ahora bien, cuando el razonamiento de la agencia sea incompatible o contrario al propósito y a la política pública del estatuto interpretado, los

tribunales tienen libertad absoluta de descartar las conclusiones de dicho organismo administrativo, en aras de obtener un resultado sensato, lógico y razonable. *Otero Rivera v. Bella Retail Group, Inc. y otros,* 2024 TSPR 70, resuelto el 24 de junio de 2024.

De otra parte, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras y Transportación de Puerto Rico y otro,* 2024 TSPR 82, resuelto el 24 de julio de 2024; *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. Por lo tanto, si al examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023).

**B. Ley Orgánica del DRNA**

El Artículo VI, Sección 19 de la Constitución del Estado Libre Asociado de Puerto Rico establece como política pública "… la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad…". LPRA, Tomo 1. A esos efectos, la Asamblea Legislativa aprobó la Ley Núm. 23, 3 LPRA sec. 151 *et seq.,* mediante la cual facultó y responsabilizó al DRNA a:

> [e]jercer la vigilancia y conservación de las aguas territoriales, los terrenos sumergidos bajo ellas y la zona marítimo-terrestre, conceder franquicias, permisos y licencias de carácter público para su uso y aprovechamiento y establecer mediante reglamento los derechos a pagarse por los mismos. A estos efectos estará facultado para ejercer aquellos poderes y facultades que le puedan ser delegadas por cualquier agencia o instrumentalidad del gobierno federal bajo cualquier ley del Congreso de los Estados Unidos. *Véase,* el Artículo 5(h) de la Ley Núm. 23, *supra.*

Con respecto a la imposición de penalidades y su notificación, el Artículo 8 de la citada ley, 3 LPRA sec. 158, establece que:

(a) Cualquier violación de esta ley o de los reglamentos promulgados al amparo de éste, constituirá delito menos grave y convicto que fuere el acusado, será castigado con pena de multa no menor de cincuenta (50) dólares ni mayor de quinientos (500) dólares, o cárcel por un período no menor de cinco (5) días ni mayor de noventa (90) días, o ambas penas a discreción del tribunal.

(b) Se faculta al Secretario del Departamento de Recursos Naturales y Ambientales a imponer multas administrativas por los daños causados a las especies de vida silvestre, animales y plantas, o por infracción a cualquier disposición de esta Ley o de los reglamentos y medidas adoptadas por el Secretario al amparo de las mismas, previa celebración de una vista administrativa. El Secretario de Recursos Naturales y Ambientales fijará, mediante reglamentación al efecto, las cantidades que en concepto de multas administrativas deberán ser pagadas por cada acto ilegal llevado a cabo en violación a lo dispuesto en este Artículo. **Las multas administrativas no excederán de cinco mil dólares ($5,000) por cada acto ilegal llevado a cabo.** Cada infracción a esta Ley o sus reglamentos se considerará como una violación separada y estará sujeta a una multa administrativa, hasta el máximo previamente establecido, así como a la penalidad adicional de tomar cursos o talleres sobre la utilización y conservación de los recursos naturales de Puerto Rico, que hayan sido aprobados por el Secretario de Recursos Naturales y Ambientales.

(c) En caso de violaciones subsiguientes a este Artículo, el Secretario de Recursos Naturales y Ambientales, en el ejercicio de su discreción, podrá imponer una multa administrativa adicional de hasta un máximo de diez mil (10,000) dólares.

(d) El Secretario de Recursos Naturales y Ambientales señalará el día, hora y sitio en que se celebrará la vista administrativa a que se refiere el inciso (b) de este Artículo, notificándole a la parte interesada la celebración de la misma por correo certificado con acuse de recibo a su última dirección conocida. La parte interesada podrá comparecer a dicha vista por sí o representada por abogado. A los efectos de la vista administrativa aquí autorizada, el Secretario de Recursos Naturales y Ambientales podrá ordenar la comparecencia y declaración de testigos, la presentación de toda la evidencia que considere pertinente y tomar juramento y recibir testimonios. Cuando se desobedezca una citación del Secretario, éste podrá recurrir al tribunal para que se expida una orden judicial requiriendo el cumplimiento de la citación. Cualquier desobediencia a la orden del tribunal podrá ser castigada por éste como desacato. **El Secretario dictará resolución dentro de los treinta (30) días siguientes a la celebración de la vista y notificación con copia a la parte interesada a su última dirección conocida.** El Secretario hará constar en su resolución una descripción del acto o actos ilegales por cuya comisión se impone la multa administrativa. La parte afectada por la decisión del Secretario podrá solicitar por escrito la reconsideración de la misma dentro de los diez (10) días siguientes a la fecha en que hubiere sido notificada de la decisión. Esta solicitud de reconsideración será resuelta por el Secretario dentro de los quince (15) días siguientes a la fecha en que hubiere sido notificado de la misma. La parte afectada por una decisión en reconsideración podrá, dentro de los diez (10) días siguientes a la fecha de notificación de tal decisión, radicar un recurso de revisión ante el Tribunal de

Primera Instancia. Radicado el recurso, el peticionario deberá notificar del mismo al Secretario dentro de un término de cinco (5) días a contar desde su radicación.

El Secretario elevará al tribunal en el plazo que éste fije, copia certificada de todo el expediente del procedimiento administrativo. La solicitud de reconsideración o la interposición del recurso de revisión a que se refiere este inciso no suspenderá los efectos de la orden o resolución del Secretario.

Sobre este tema, el Alto Foro resolvió en *Román Ortiz v. OGPe,* 203 DPR 947, 856 (2020) que, la validez de la notificación depende de que se dirija a la parte con derecho a ello y que se efectúe a través de los mecanismos autorizados. A tono con lo anterior, el Tribunal Supremo allí aclaró que, las agencias gobernadas por la LPAU pueden utilizar el método de notificación que dispone su ley habilitadora, sin la necesidad de ceñirse a los parámetros de notificación que establece la Sección 3.14 de la LPAU, 3 LPRA sec. 9654, la cual exige que se notifique la orden o resolución final a las partes por correo ordinario y por correo certificado.

**III.**

En su recurso, el Recurrente señala la comisión de cuatro errores. Por considerarlo apropiado, invertiremos el orden, por lo que comenzaremos nuestra discusión con el segundo error. Allí, el Recurrente argumenta que, el DRNA emitió un dictamen que carece de determinaciones de hechos, el cual notificó a una dirección a la cual sabía que la señora Rosanna Rodríguez Rodríguez no la recibiría. Veamos.

La Sección 2.3 de la LPAU, 3 LPRA sec. 9613, encomienda al funcionario que preside la vista pública, como es el caso de la Oficial Examinadora, la preparación de un informe que resuma la prueba vertida durante la audiencia.[9] Conforme lo exige la Sección 3.13 de la LPAU, 3 LPRA sec. 9653, la Oficial Examinadora deberá entregar el referido informe al DRNA para su consideración, si carece de facultades para adjudicar. Con el beneficio del mencionado informe, junto al conocimiento especializado de la agencia, su experiencia,

---

[9] Véase, además, la Sección 2.6(c) de la LPAU, 3 LPRA sec. 9616(c).

competencia, técnica, discreción y juicio, el DRNA emitirá su determinación, en cumplimiento con la Sección 2.4 de la LPAU, 3 LPRA sec. 9614. Como vemos, nada impide al DRNA acoger el *Informe de la Oficial Examinadora,* ni lo obliga a consignar en su dictamen determinaciones de hechos, independientes a las que surgen del informe ante sí.

Con respecto a la presunta notificación inoficiosa, cabe recordar que, la *Querella Enmendada* y la *Resolución* final del DRNA fueron enviadas, mediante correo certificado, a la última dirección conocida de la señora Rosanna Rodríguez Rodríguez, a tenor de la Ley Núm. 23, *supra.* Puntualizamos que, el Recurrente proveyó la referida dirección el día antes de que la querella fuese enmendada, durante la vista de seguimiento celebrada el 10 de julio de 2012. Sin embargo, según el volante de correo certificado, el servicio postal devolvió la correspondencia por no haber sido reclamada.

A lo anterior se añade que, el DRNA hizo gestiones para notificar la *Querella Enmendada* personalmente a la señora Rosanna Rodríguez Rodríguez. Según expusimos en el tracto procesal, el primer intento fue el 25 de enero de 2013. Obra en el expediente un *Informe Suplementario,* con fecha de 1 de mayo de 2018, del cual se desprende una segunda gestión a esos efectos. En el referido escrito, el Sargento José A. Rosado del Cuerpo de Vigilantes del DRNA hizo constar que: fue al Condominio Villas de Hato Tejas; que las personas consultadas no conocían a la señora Rosanna Rodríguez Rodríguez; que dejó una nota con su información de contacto en el buzón número 481 por si correspondía al de la co-querellada, sin haber recibido comunicación de su parte.[10]

En vista de que el Recurrente no demostró que los intereses propietarios de la señora Rosanna Rodríguez Rodríguez se hayan visto afectados producto de lo anterior; que el Recurrente no presentó prueba que rebatiera las determinaciones de hecho que

---

[10] *Alegato* del DRNA, Apéndice XXXV, pág. 142.

acogió el DRNA; y habida cuenta de que la presente causa procura resarcir y corregir un aprovechamiento de un bien de dominio público, dictaminamos que el segundo error no se cometió.

El Recurrente imputa al DRNA en su tercer y cuarto señalamiento de error, haber omitido en la querella objeto de este recurso el texto correspondiente a las infracciones cometidas lo cual, a su entender, tuvo el efecto de impedirle conocer cuáles derechos le cobijan y sobre cuáles aprovechamientos deberá solicitar una concesión. No tiene razón.

La *Querella Enmendada* hizo referencia al infringido Artículo 4.2 del Reglamento Núm. 4860, *supra*. Si bien es cierto que el DRNA no citó textualmente el lenguaje de la referida disposición reglamentaria en su totalidad, ello no constituye una violación al debido proceso de ley del Recurrente. Se colige de la *Querella Enmendada* que, los co-querellados construyeron o poseen un muelle, descrito como en forma de "S", que mide 37.8, 24.2 y 18.6 de largo por 4.1 pies de ancho en el Municipio de Guayama, específicamente adyacente a la Reserva de Investigaciones Estuarinas de Bahía de Jobos. También la querella enmendada detalló claramente que, el referido muelle está localizado entre una franja de manglar de borde que afecta su crecimiento, recuperación, condición de hábitat y valor ecológico. Fundamentado en lo anterior, el DRNA imputó a los co-querellados estar utilizando o aprovechándose de bienes de dominio público en zona marítimo terrestre.

Sobre el deslinde, el Recurrente expone en su recurso que, no surge de la *Resolución* impugnada ni del correspondiente informe la fecha en que se llevó a cabo el deslinde o la demarcación de la zona marítimo terrestre. Lo antes, a pesar de que dicha fecha activa el comienzo de su término para solicitar la autorización para continuar los usos o aprovechamientos de bienes de dominio público en zona marítimo terrestre. Sin embargo, según aclara el DRNA en su *Alegato,* la necesidad de efectuar un deslinde aplica únicamente

cuando el aprovechamiento de los bienes de dominio público marítimo terrestre ocurre sobre predios tierra adentro, no cuando la construcción ilegal está sobre terrenos sumergidos en aguas navegables y manglares, los cuales son bienes exclusivamente de dominio público. Sustentado en lo anterior, la agencia asegura que "no existe límite interior tierra adentro [...] que determinar."[11]

Reiteramos que, el Recurrente falló en derrotar la presunción de corrección y regularidad que cobijan las determinaciones de hechos del organismo administrativo, sin presentar prueba a los efectos de establecer que la *Resolución* impugnada no está basada en evidencia sustancial. Tampoco demostró que el DRNA erró en la aplicación de las leyes y reglamentos que administra o que se violentaron derechos constitucionales de los co-querellados.

Conforme a la normativa aplicable, y en atención a la vasta experiencia y al conocimiento especializado que posee el DRNA sobre los asuntos que le fueron encomendados, concedemos deferencia a la determinación de la agencia y nos abstenemos de intervenir con esta, en ausencia de arbitrariedad, ilegalidad o irrazonabilidad. El DRNA actuó conforme a derecho, al imponer a los co-querellados una multa administrativa de cinco mil dólares ($5,000.00) por su infracción al Artículo 4.2 del Reglamento Núm. 4860 y al ordenar la remoción de la estructura objeto de esta causa. El tercer y cuarto error no fueron cometidos.

Por último, el Recurrente cuestiona como primer error la demora excesiva del DRNA en adjudicar este asunto. Tal cual expusimos en el tracto procesal, la agencia inició la causa de epígrafe, el 28 de febrero de 2005, con la presentación de una querella. A pesar de que el Recurrente notificó a la agencia el fallecimiento del señor Rodríguez Torres, el 11 de septiembre de 2007, no es hasta el 10 de julio de 2012 que el DRNA celebró una

---

[11] *Alegato* del DRNA, pág. 33.

vista de seguimiento, producto de la cual, obtuvo las direcciones de los co-querellados y pudo enmendar la querella a esos efectos.

Al cabo de más de cinco (5) años desde la referida enmienda, la agencia celebró la vista adjudicativa, en particular, el 16 de mayo de 2018. A lo anterior se añade que, la Oficial Examinadora demoró más de tres (3) años en rendir su informe, a saber, el 13 de abril de 2022; mientras que, el DRNA tardó otros dos (2) años en emitir su dictamen final, específicamente, el 27 de agosto de 2024.

No obstante, lo anterior, a pesar de reconocer que el presente caso fue reasignado en dos (2) ocasiones de oficial examinador, el DRNA atribuye la demora exclusivamente al Recurrente. Ello, tras al menos cuatro (4) solicitudes de posposición de la vista adjudicativa, debido a cambios de representación legal del Recurrente, y a dos incomparecencias que dieron paso a su anotación de rebeldía. Añade la parte recurrida que, el Recurrente tenía a su haber el recurso extraordinario de *mandamus* para compeler a la agencia a acatar los términos de la LPAU, lo cual optó por no hacer. Asegura que, nada de lo antes acarrea que el DRNA pierda su jurisdicción sobre este asunto.

Nos resulta evidente que, la agencia ha incurrido en la extrema tardanza en el trámite según se le imputa y a su vez, el Recurrente nunca agotó los recursos extraordinarios disponibles para promover su postura y remedio. A pesar del cuadro fáctico expuesto, no observamos que la agencia recurrida haya perdido jurisdicción para actuar y tampoco nos encontramos en posición para disponer lo contrario. Ante ello, y en ausencia de error manifiesto, arbitrariedad o irrazonabilidad, se sostiene la deferencia correspondiente al dictamen administrativo recurrido.

**IV.**

Por las razones que anteceden, confirmamos la *Resolución* del DRNA aquí impugnada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Barresi Ramos concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones